COOKS, Judge.
The employer appeals the judgment of the Office of Workers’ Compensation awarding claimant compensation benefits, attorney’s fees and penalties. For the following reasons, we affirm.
FACTS
David Broussard was employed by Mobile Home Repairs, Inc., on July 13, 1995 when he fell while walking down the steps of a mobile home. Broussard sought medical attention at University Medical Center the morning following the accident, where he was seen by a physician, given medication and released. Broussard alleged the fall caused him to suffer pain in his neck and back. The employer referred him to Dr. Clifton Shepherd on August 8, 1995. Dr. Shepherd performed a lumbar examination and found Broussard had ^tenderness in his neck, shoulders and back. Dr. Shepherd recommended lumbar and cervical MRIs. Both MRIs showed arthritic changes and some disc bulging. Dr. Shepherd examined Brous-sard again on September 7, 1995 and ordered a CT scan of the neck and back. The CT scan was interpreted by Dr. Shepherd as being basically normal. After an examination on September 19, 1995, despite Brous-sard’s complaints of pain and leg numbness, Dr. Shepherd felt he had reached maximum medical improvement and cleared him to return to work. Broussard did attempt to return to work; but he remained only a few hours complaining that the work caused him to experience severe pain and numbness in his arms and legs. He visited Dr. Shepherd for the last time on September 28, 1995. Dr. Shepherd maintained his opinion that Brous-sard had reached maximum medical improvement and should be released from his care without restrictions. Relying on Dr. Shepherd’s conclusions, the employer discontinued Broussard’s workers’ compensation benefits on September 25, 1995.
Broussard was examined on October 9, 1995, by Dr. Frazer Gaar, who noted posteri- or spurring and bulging at the C6-7 level. Dr. Gaar concluded, however, that the MRI’s and CT scan were within acceptable limits; and he too felt Broussard could return to work.
Broussard then saw Dr. Jack Hurst, a neurosurgeon. Dr. Hurst found the MRI indicated “C6-7 central spondylosis with displacement of the cord and slight bilateral foraminal stenosis.” Dr. Hurst ordered cervical myelograms and a CT scan, which revealed cervical spondylosis at the C4-5 and C6-7 levels. Dr. Hurst recommended on November 29, 1995 that Broussard not return to work; and, he ordered “self-directed physical therapy after which time Mr. Broussard could return to employment after the first of the year.” Despite Dr. Hurst’s findings the employer’s insurance company did not resume compensation benefits.
Broussard testified he was in such pain he could not resume working at the beginning of the year. He stated he borrowed money from a relative and went to see Dr. John Jackson, a neurosurgeon. Dr. Jackson concluded Broussard sustained a ruptured disc at the C5-6 level and had additional pathology coming from the- C6-7 level. He recommended surgery at the C4-5 and C5-6 levels. He also felt, after this cervical surgery, Broussard might need back surgery. The report and recommended medical treatment was sent to the employer. The employer refused to pay for the recommended treatment.
Broussard then filed suit requesting the employer reinstate compensation benefits as well as pay for the recommended medical treatment. Mediation was held, but no progress was forthcoming. Eventually, both parties agreed to submit to an independent medical examination by Dr. Patrick Juneau. Dr. Juneau found Broussard was suffering from cervical and lumbar myofascial pain syndrome with referred numbness to the left leg and left arm and he recommended a structured physical therapy program with a physical and pain specialist. Dr. Juneau felt Broussard could return to work if he could tolerate the pain.
Despite Dr. Juneau’s medical conclusions and recommendations, the employer did not reinstate benefits or medical payments. After trial, the workers’ compensation judge found the employer ignored the independent *1034 medical examiner’s findings that Broussard was in pain, and awarded workers’ compensation benefits to Broussard along with penalties and attorney fees. The employer lodged this appeal, contending the workers’ compensation judge manifestly erred.
ANALYSIS
The appropriate standard for appellant review in workers’ compensation cases is set out in Freeman v. Poulan/Weed, Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737:
In a workers’ compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A court of appeal may not set aside a trial court’s or a jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Rosell, supra; Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.
The employer argues the workers’ compensation judge “erred in failing to accord the testimony of the independent medical examination physician significant weight.” However, a review of the workers’ compensation judge’s reasons for judgment reveal he relied heavily on the report of Dr. Juneau in l5rendering his decision:
Now, they come up with Dr. Patrick A. Juneau as an IME. His diagnosis was cervical and lumbar, that’s m-y-o-s-a-s-ac-I-a-1 pain syndrome with some referring numbness into left arm and left leg, but he did find the basis for pain.
He said there was no work restriction excepts as dictated by pain, but to help with conservative management of pain, it would be prudent to bring in a physical and pain specialist, and then after three months, obtain the F.C.E.A.; that’s a capacity evaluation, see what it can do to help reassess his entry back into the work force.
First of all, he said he can go back to work and then he says, no, he can’t go back to work; he’s got to have this physical therapy. And then you give him the capacity evaluation test to determine what he can do.
But the employer did none of this. He took no steps at all to localize or force his attentions on this left foraminal stenosis. Even a plaintiff lawyer would jump when he saw that stenosis with its narrowing because he knows that there’s narrowing of the space in the vertebra which could impinge on the nerve root.
The fact of the matter is, they didn’t do anything, the employer. They have all of this evidence of a Cat Scan of the cervical spine, spondylosis. This is found by Dr. Juneau. And they have the MRI itself that shows significant pathology.
They have one doctor saying he needs surgery; that’s Dr. Hurst. And they have their own I.M.E. that tells them that he’s going to have pain and it would be prudent to bring in a physical and pain specialist to determine what he can do and then take this functional capacity evaluation test to see what all he can do.
Now, the law required in a case like that that the insurance company cannot rely on just one report Rthat says a man can go back to work, especially when they’re receiving other reports that shows he can’t go back to work; when they’re receiving other reports that show he has sufficient pathology. And that when they do that, which is what they did in this case, they’re subject to penalty.
The employer also alleges the workers’ compensation judge committed “manifest error in assuming the role of a physician in the *1035 interpretation of diagnostic test results.” This assignment of error is -without merit. The workers’ compensation judge in his oral reasons for judgment reviewed all the medical testimony and reports presented at trial. We find the medical evidence supported the workers’ compensation judge’s conclusions, particularly when great reliance was placed on the findings of the independent medical examiner.
We also find without merit the employer’s assignment of error that the workers’ compensation judge committed manifest error in awarding penalties and attorney’s fees. The workers’ compensation judge clearly noted in his oral reasons that the employer’s insurance company relied on Dr. Shepherd’s report and concluded Broussard could return to work, when there were other reports, including that of the independent medical examiner, stating he had significant pathology and was in pain. He did not manifestly abuse his discretion in awarding penalties and attorney’s fees.
DECREE
For the above reasons, the judgment of the Office of Workers’ Compensation is affirmed. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.