11 BAGNERIS, Judge.
Appellant, Virgie R. Holloway, appeals the judgment of the Office of Worker’s Compensation, whereby the Workers’ Compensation Judge (WCJ) found that Holloway failed to carry her burden that she sustained any disabling injury as a result of a work-related injury in December 1996 and/or February 1997. The WCJ further found that Holloway was not entitled to any compensation benefits. We agree with the decision of the Workers’ Compensation Judge.
On appeal, Holloway makes the following contentions:
1. The WCJ erred in failing to award compensation benefits to Holloway from March 21, 1997, through the time of trial, continuing into the future;
2. The WCJ erred in failing to award Holloway all medical expenses allegedly incurred by her as a result of the alleged workplace accidents of December 1996 and February 1997;
3. The WCJ erred in failing to find the employer, Hilton Hotels Corporation, arbitrary and capricious in failing to pay compensation and medical benefits; and
*799 | ¡>4. The WCJ erred in failing to award Holloway’s fees due to the alleged arbitrary and capricious behavior of the employer, Hilton Hotels Corporation.

FACTS

The defendant Hilton Hotels Corporation (Hilton), employed Virgie R. Holloway (Holloway) as an “Assistant and/or Extra Banquet Waiter.” Holloway was involved in a slip and fall accident in December of 1996. According to Holloway, she was setting up for a party. While on her way to get water and ice for her tables, she slipped and fell. There were several witnesses who observed that accident and assisted Holloway in getting up off the floor. Holloway denied that she sustained any injury and continued setting up for the party. Later on that night, however, Holloway informed one of the Banquet Managers that she did injure herself. The Banquet Manager instructed her to file an accident report with Hilton’s personnel office.
The next day, Holloway contacted Hilton’s personnel office to file an incident report. Later that same day, Holloway went to Mercy Hospital’s Emergency Room. Holloway’s chief complaints were that she injured her whole left side and her right knee. Holloway returned to work five days later.
In February 1997, Holloway was involved in another accident at the Hilton. Holloway contends that she sustained injuries when a freight elevator door struck her on the head as it was closing. There were no witnesses to this accident. Immediately after the alleged accident, an Executive Sous Chef at the Hilton assisted Holloway and brought her to the office of Matt Abadie, a Banquet Manager.
13Matt Abadie testified that after the accident, he spent between twenty and thirty minutes with Holloway before she went to the doctor. Abadie further testified that Holloway denied that she was injured and stated that she did not want to go to the doctor. Abadie testified that he assisted Holloway in completing an accident report, and that Holloway immediately went to see Dr. William Woessner. Holloway contends that, as a result of this accident she suffers neck and lower back pain, as well as “sharp pains running down my neck into my shoulder and my arms...into the back of my legs and my right and my left knee....”. Holloway also claims that the whole right side of her body has been numb since this accident.
After the February 1997 accident, Holloway filed a workers’ compensation claim in connection with both the December 1996 and the February 1997 accidents. On April 20, 1998, a hearing was held in this matter. The Workers’ Compensation Judge ruled in favor of the Hilton, finding that Holloway failed to carry her burden that she sustained any disabling injury as a result of a work-related injury in December 1996 and February 1997. The Judge further found that the Claimant was not entitled to any workers’ compensation benefits. The claimant then filed an appeal with this Court, seeking to reverse the judgment in favor of the Hilton.
| ¡LA W AND DISCUSSION
Standard of Review
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1163; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Smith v. Louisiana Dep’t of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-738. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Seal, 97-0688 at p. 4; 704 So.2d at 1163; Banks, 96-2840 at pp. 7-8, 696 So.2d at *800 556; Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfin-der’s choice between them can never be manifestly erroneous or clearly wrong. Seal, 97-0688 at p. 5, 704 So.2d at 1164; Banks, 96-2840 at p. 8, 696 So.2d at 556; Stobart, 617 So.2d at 882. “Thus, ‘if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Seal, 97-0688 at p. 5, 704 So.2d at 1164; Banks, 96-2840 at p. 8, 696 So.2d at 556 (quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
| ¡^Assignment of Error Number One
Holloway contends that the WCJ erred in failing to award compensation benefits to the claimant from March 21, 1997, through the time of trial, and not continuing benefits into the future. Holloway argues that the WCJ erred in not assigning more weight to the opinion and diagnosis of the claimant’s treating physician.
At the hearing, Holloway testified that she saw a variety of doctors in connection with the injuries she allegedly sustained in these accidents. Hollway testified that on the date of the February 1997 accident, she went to see Dr. William Woessner. Holloway testified that during her initial visit with Dr. Woessner, he examined her and ordered that she have an MRI. Dr. Woessner referred her to Dr. Carlos Gor-bitz. Holloway testified that she met with Dr. Woessner on five other occasions after this initial visit. Holloway testified that these visits occurred between February 28, 1997 and March 21,1997.
Dr. Woessner, through his deposition testimony, confirmed that he treated Holloway in connection with the February 1997 accident. Dr. Woessner testified that he examined Holloway for the first time on the date of the February 1997 accident. Dr. Woessner testified that she had no contusions, bruises, abrasions, or swelling. In short, there were no objective signs of injury as a result of the accident. Dr. Woessner further testified that, even though Holloway did not possess any objective signs of injury, he prescribed treatment for her as a precautionary measure. Dr. Woessner testified that he released Holloway to regular duty work and discharged her on March 21,1997.
Holloway testified that she visited Dr. Carlos Gorbitz in March of 1997. Dr. Gor-bitz testified by deposition and confirmed that his visit with Holloway occurred Lon March 18, 1997. Dr. Gorbitz testified that he conducted a neurosurgical physical examination of Holloway. Dr. Gorbitz testified that this exam produced normal findings. Dr. Gorbitz also noted that he found no objective signs of injury during his examination.
Dr. Gorbitz testified that his interpretation of the claimant’s MRI film did show that plaintiff had bulging discs from the C3 to the C7 level of her neck, but the bulges did not compress or distort the nerve root. Dr. Gorbitz further testified that he believed that these findings pre-existed the date of the accidents which are the subject of this workers’ compensation claim. Dr. Gorbitz testified that there was no reason to restrict the claimant from returning to work.
Holloway testified that she also saw Dr. Stuart Phillips, to whom she was referred by her attorney. Holloway further testified that she considers Dr. Phillips to be her Treating Physician for these accidents. Holloway testified that she was still treating with Dr. Phillips at the time of the trial.
Dr. Phillips testified through deposition and confirmed that he did examine Holloway for the first time on May 15, 1997, approximately three months after the February 1997 accident. Dr. Phillips testified that he saw Holloway on two additional *801 occasions in 1998 for further evaluations. Dr. Phillips testified that he examined Holloway on May 15, 1991, and observed that she had loss of motion, muscle tenderness and spasm, a decrease in her right biceps reflex and weakness in grasping in the right hand, decreased sensation in the C5 dermatome on the right, pain on axial compression, positive Adson’s sign on the right and a negative Adson’s sign on the left, with shoulder motion limited on the right. Dr. Phillips also observed that Holloway had tenderness and spasm in the mid back, with muscle spasm and fifty percent loss of motion in the lumbar spine with a |7positive straight leg raising test. Dr. Phillips testified that Holloway’s lower back exam was only moderately abnormal although she did have some numbness in the right leg.
Dr. Phillips further testified that he reviewed the claimant’s MRI films. Dr. Phillips testified that the MRI indicated that Holloway suffered from degenerative spinal stenosis with four Type II-A hérni-ated nucleus pulposus in her cervical spine from the C-3 to the C7 levels. Dr. Phillips testified that he rates Holloway as having a total permanent disability insofar as her job is concerned. Dr. Phillips testified that Holloway can only lift up to twenty (20) pounds, and this was a permanent condition.
Dr. Phillips further testified that he made his diagnosis based upon an accurate history from Holloway. Dr. Phillips opined that connecting any of Holloway’s symptoms to what was shown on the MRI “comes down purely to the accuracy of her history and her credibility.”
Holloway also saw Dr. James Butler on June 9, 1997. Dr. Butler testified through deposition and confirmed that he examined Holloway. Dr. Butler noted that he did not find any evidence of injury to Holloway’s discs or vertebra. Dr. Butler further noted that he did not find any evidence of aggravation of Holloway’s preexisting condition. Dr. Butler opined that the MRI findings were not caused or aggravated by the trauma. Dr. Butler also testified that the accident described to him did not aggravate Holloway’s neck. Dr. Butler testified that he believed that Holloway could resume her previous activities.
At the hearing, Holloway that she had a long history of accidents. In addition to the two accidents which are the subject of this workers’ compensation claim, Holloway testified that she has been involved in approximately five other accidents. Holloway testified that these accidents occurred on the following dates: |ssome time in 1959; some time in 1989 or 1990; some time in 1991; November 1995; and December 1996. Holloway further testified that she treated with the following physicians for some of these accidents: Dr. Ward; Dr. Simmons; Dr. Hersh; Dr. Ri-choux; and other Charity Hospital physicians. Holloway testified that she sustained injury to her neck and back in several of these incidents. Holloway further testified that she did not visit with any of these named doctors in connection with the December 1996 and February 1997 Hilton accidents. Rather, Holloway testified that she visited with all new physicians.
Holloway testified that despite her long accident history and despite the fact that many of her resulting complaints in these prior accidents were the same as the resulting complaints in the Hilton accidents, she did not tell any of her treating physicians about her prior accident history and her prior medical treatments. Holloway testified to this only after claiming throughout most of her hearing testimony that she “did not remember” whether or not she told Drs. Woessner, Gorbitz, Phillips and Butler about her prior accident history.
Finally, after repeated questioning on this point, Holloway admitted that she did not tell any of these doctors about her extensive accident history because “I didn’t go there for that.” Dr.’s Woessner, Gorbitz, Phillips and Butler confirmed that *802 Holloway did not provide them with her prior medical or prior accident histories.
After considering the evidence and the jurisprudence, we find that three out of four of the physicians that treated Holloway for these Hilton accidents stated that Holloway was able to return to work. Only Dr. Stuart Phillips disagreed with this assessment. Holloway contends that because this is a worker’s compensation claim and because Dr. Phillips is her treating physician, the WCJ should haveRgiven more weight to his diagnosis and opinions than those of the other physicians. Holloway cites Louisiana case law in support of this contention. While we agree with the case law, we take issue with the classification of Dr. Phillips as Holloway’s treating physician. Further, we find that Dr. Phillips’ own testimony regarding the importance of a. patient’s credibility and the accuracy of that patient’s history to his diagnosis, coupled with the fact that Holloway failed to give him an accurate history, also diminishes the weight of his diagnosis and opinions in this case. Therefore, we find that the WCJ was not manifestly erroneous in not assigning more weight to Dr. Phillips’ conclusions.
Holloway testified that Dr. Phillips was her treating physician for these Hilton accidents. However, Holloway did not visit with Dr. Phillips until almost three months after the accident occurred. This visit also occurred after Dr. Woessner had cleared Holloway as being able to return to work. Holloway only saw Dr. Phillips on three occasions, whereas she visited with Dr. Woessner on six occasions. Yet, she chose to classify Dr. Phillips as her treating physician, rather than Dr. Woessner. The WCJ apparently did not agree with this classification. We find that the WCJ was not manifestly erroneous in concluding that Dr. Phillips was not Holloway’s treating physician and as a result, the WCJ was not manifestly erroneous in refusing to afford more weight to Dr. Phillips’ testimony regarding Holloway’s ability to return to work.
In addition, Dr. Phillips himself testified that he depended upon an accurate history from Holloway in order to develop an accurate diagnosis. Dr. Phillips testified that connecting any of Holloway’s symptoms to what was shown on the MRI “comes down purely to the accuracy of her history and her credibility.” Further, Holloway admitted that she had a long history of accidents before the |1flaccidents that are the subject of this claim. Holloway admitted that she treated with several different physicians for injuries sustained in these prior accidents. Further, Holloway conceded that many of her resulting complaints from the prior accidents were the same as her resulting complaints from the Hilton accidents. Holloway finally admitted that she did not tell any of the doctors with whom she treated for the Hilton accident about any of her prior accidents or medical history. Because Dr. Phillips himself testified that he cannot give an accurate diagnosis without an accurate history from the patient, the weight of his testimony is diminished considerably. Therefore, the WCJ was not manifestly erroneous in failing to give more weight to Dr. Phillips’ testimony.
Further, we find that the WCJ was not manifestly erroneous in concluding that Holloway could return to work because of the fact that the other three physicians concluded likewise. This assignment of error is without merit.
Assignment of Error Number Two
Holloway contends that the WCJ erred in failing to award her all medical expenses she allegedly incurred as a result of the alleged workplace accidents of December 1996 and February 1997. We disagree with this contention.
Under La.R.S. 23:1203, the employer has a duty to furnish necessary medical services and treatment to a worker’s compensation claimant. However, the plaintiff in a suit is required to establish his claim to a reasonable certainty and by a preponderance of the evidence. Charles *803 v. South Cent. Industries, 95-746, p. 4 (La.App. 3 Cir. 12/6/95), 667 So.2d 1129, 1131; Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992); Fruge v. Gravity Drainage Dist. No. 5, 94-685 (La.App. 3 Cir. 12/7/94); 647 So.2d 561 writ denied, 95-0066 (La.3/10/95); 650 So.2d 1180. Furthennore, the claimant is entitled to all medical benefits made necessary by the work-related accident. Charles, 95-746 at p. 4, 667 So.2d 1129, 1131; Foreman v. West Calcasieu-Cameron Hosp., 625 So.2d 1104 (La.App. 3 Cir.1993), writ denied, 93-2740 (La. 1/7/94); 631 So.2d 450. Nevertheless, the claimant is not entitled to recover for medical expenses where he fails to offer proof to substantiate his claim. Charles, 95-746 at p. 4, 667 So.2d 1129, 1131; Steven v. Liberty Mut. Ins. Co., 509 So.2d 720 (La.App. 3 Cir.1987); Lee v. East Baton Rouge Parish Sch. Bd., 623 So.2d 150 (La.App. 1 Cir.), writ denied, 627 So.2d 658 (La.1993).
Bettie Wilson, Claims Representative for the Hilton, testified that the Hilton paid seven hundred and eleven dollar's ($711) in doctors’ bills for Holloway. Ms. Wilson also testified that the Hilton paid two weeks of workers’ compensation in the amount of four hundred and eighty-six dollars and seventy-five cents ($486.75), as well as sixty-one dollars and ninety-six cents ($61.96) in prescription bills for Holloway. Ms. Wilson testified that these payments covered all of Holloway’s medical treatment, with the exception of two visits that Holloway made to Dr. Stuart Phillips in 1998. Ms. Wilson testified that the Hilton’s position with regard to these two bills was that three out of four physicians had cleared Holloway to return to work before these two visits with Dr. Phillips occurred; therefore, the Hilton did not honor these bills for the two visits.
The WCJ ruled that Holloway failed to carry her burden that she sustained any disabling injury as a result of a work-related injury in December 1996 and February 1997. After a careful review of the entire record, including the testimony of all physicians involved and the testimony of Bettie Wilson, we find that the WCJ did not manifestly err when she failed to award Holloway all medical | ^expenses allegedly incurred by her as a result of these two alleged workplace accidents. This assignment of error lacks merit.
Assignment of Error Number Three
Holloway contends that the WCJ erred in failing to find the Hilton arbitrary and capricious in failing to pay compensation and medical benefits. We disagree with this contention.
Whether or not the refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action, and the failure to pay is not arbitrary and capricious when it is based on a substantial bona fide factual contention. Cook v. Kaldi’s Coffee House, 97-0979, pp. 6—7 (La.App. 4 Cir. 1/28/98), 706 So.2d 1052, 1058 (quoting Maiden v. Crossroads of Louisiana, Inc., 678 So.2d 75, 79 (La.App. 4 Cir. 7/24/96)). Whether or not a refusal to pay benefits is arbitrary, capricious, nor without probable cause depends primarily on the facts known to the employer at the time of its action. Lubom v. L.J. Earnest Inc., 579 So.2d 1174, 1182 (La.App. 2d Cir.1991) citing Loyd v. IMC Fertilizer, Inc., 557 So.2d 1078, writ denied, 561 So.2d 102 (La.1990).
In the case sub judice, Hilton did pay compensation and medical benefits to Holloway. The Hilton paid seven hundred and eleven dollars ($711) in Doctors’ bills for Holloway. The Hilton also paid two weeks of workers’ compensation in the amount of four hundred and eighty-six dollars and seventy-five cents ($486.75). The Hilton additionally paid sixty-one dollars and ninety-six cents ($61.96) in prescription bills for Holloway. These payments covered all of 113HoIloway’s medical treatment with the exception of two visits that Holloway made to Dr. Phillips in 1998.
The Hilton’s position with regard to these two bills was that three out of four *804 physicians had cleared Holloway to return to work long before these two visits even took place; therefore, the Hilton argued that they were not responsible for the payments for these visits.
The WCJ apparently found that the Hilton’s refusal to pay for these two 1998 visits was based upon a substantial bona fide factual contention because the WCJ failed to find the Hilton arbitrary and capricious in its refusal to make these payments. We agree. There is no evidence in the record to substantiate a finding that the Hilton was arbitrary and capricious in denying compensation for Holloway’s two 1998 visits to Dr. Phillips where three out of four doctors opined that Holloway was able to return to work in 1997. We find that the WCJ was not manifestly erroneous in refusing to find the Hilton arbitrary and capricious because of the Hilton’s refusal to pay these disputed medical bills. This assignment of error is without merit.
Assignment of Error Number Four
Holloway asserts that WCJ erred in failing to award attorney’s fees due to the alleged arbitrary and capricious behavior of the employer, Hilton Hotels Corporation. We disagree with this assertion.
LSA-R.S. 23:1201(F) provides the basis for an award of attorney fees and penalties. LA.REY.STAT. ANN. 23:1201(F) (West Supp.1997). This provision, however, is inapplicable if the claim is reasonably controverted. [WCJ] has great | udiscretion in the award of attorney fees and penalties in a workers’ compensation case, and the exercise of such discretion will not be disturbed on appeal unless clearly wrong. Rareshide v. Mobil Oil Corp., 97-1376, p. 14 (La.App. 4 Cir. 4/22/98), 719 So.2d 494, 506; Sterling v. Orleans Parish School Board, 96-0107 (La.App. 4 Cir. 6/26/96), 679 So.2d 167. The award of penalties and attorney’s fees in a workers’ compensation case is based on a finding of fact and should not be disturbed unless it is clearly wrong. Glynn v. City of New Orleans, 95-1353, p. 4 (La.App. 4 Cir. 4/3/96), 672 So.2d 1112, 1115-1116; Lemoine v. Schwegmann Giant Supermarkets, Inc., 607 So.2d 708, 713 (La.App. 4 th Cir.1992), writ denied, 609 So.2d 258 (La.1992).
In the instant case, Hilton contested the payment of the bill for two visits that the claimant made to Dr. Stuart Phillips in 1998. The Hilton based its denial of payment on the fact that Holloway had been released to return to work by three out of four doctors in 1997. The WCJ agreed that this was a reasonable basis for denial of payment. We find that the WCJ was not clearly wrong in failing to award attorney’s fees to Holloway. This assignment of error is without merit.
For the foregoing reasons, we find that the Workers’ Compensation Judge was not manifestly erroneous. Accordingly, we affirm its judgment.

AFFIRMED.