786 So.2d 163 (2001)
Donna L. WHITTENBURG, et al.
v.
ZURICH AMERICAN INSURANCE COMPANY, et al.
No. 2000-C-2697.
Court of Appeal of Louisiana, Fourth Circuit.
April 18, 2001.
*164 Jeffrey C. Napolitano, Randy Hoth, Juge, Napolitano, Guilbeau, Ruli & Frieman, Metairie, Counsel for Defendant/Relator.
Eric A. Holden, Holden & Garcia, New Orleans, W. Reed Smith, New Orleans, Counsel for Plaintiff/Respondent.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY.
PLOTKIN, J.
Defendant Zurich American Insurance Co. ("Zurich") seeks supervisory review of a trial court judgment granting a motion to compel filed by plaintiff Donna L. Whittenburg, ordering production of all recorded statements, written statements, and/or transcripts of recorded statements taken by Zurich in connection with its investigation of the death of Mrs. Whittenburg's husband. We grant writs, and affirm the trial court judgment.
Mrs. Whittenburg's husband, Thomas Whittenburg, was killed in a one-vehicle accident on the night of July 22, 1999. At the time, he was employed as a manager for Professional Employer Services, Inc., an employee leasing company. Under a leasing agreement, Mr. Whittenburg was managing marine surveyors for RMI Inspectorate, which was insured by Zurich. On the day of his death, Mr. Whittenburg attended a meeting held at RMI's office, which was attended by many of its surveyors. Following the meeting, Mr. Whittenburg and other surveyors went to the Hooters Restaurant on Belle Chasse Highway, and then to the Club House Bar and Grill for a lingerie show and cocktails. Mr. Whittenburg was killed at approximately 11:20 p.m. while driving home from *165 the Club House, when his pickup truck struck a power line support at the corner of Wall and General DeGaulle Boulevards in Algiers. The pickup truck he was operating had been provided to him by RMI. Blood alcohol tests after the accident showed that Mr. Whittenburg had a blood alcohol level of 0.26%.
On August 2, 1999, Mrs. Whittenburg filed a claim for workers' compensation benefits, asserting that her husband was in the course and scope of his employment at the time of his death. By letter dated May 25, 2000, Zurich denied Mrs. Whittenburg's claim for workers' compensation benefits. However, the day before Zurich's written denial of the workers' compensation claim, on May 24, 2000, Mrs. Whittenburg had filed a Petition for Workers' Compensation Benefits. Mrs. Whittenburg claimed that her husband routinely took surveyors out for dinners and cocktails after RMI meetings. On these occasions, she said, he would charge the expenses to his personal credit card, and RMI would reimburse him. Mrs. Whittenburg asserted that after her husband's death, she was reimbursed by RMI for credit card charges he had incurred for the dinner and alcoholic beverages with the surveyors on the night of his accident.
Mrs. Whittenburg propounded interrogatories and requests for admission to Zurich on June 8, 2000. On July 7, 2000, she filed a Motion to Compel Responses to the interrogatories and requests for admission. In response to one of Mrs. Whittenburg's interrogatories, Zurich admitted that it had assigned the "claim" to Glenn Giles, one of its adjusters, after the fatal accident. Zurich stated that Giles hired Stephen Gilbert, whom relator characterized as a "field adjuster" employed by Zylicz & Associates. According to Zurich, Gilbert took statements from two RMI employees on July 30, 1999, and from five other employees on August 27, 1999; Zurich revealed the names of all seven employees. Zurich stated that Gilbert had possession of the tape recordings of the statements, while its adjuster, Giles, and its counsel had transcripts of the statements. However, Zurich objected to the interrogatory "in that it asks for information gathered in anticipation of litigation." Mrs. Whittenburg reurged her motion to compel; the trial court granted the motion.
Zurich claims that the items sought by Mrs. Whittenburg are protected from discovery by the provisions of La. C.C.P. art. 1424, which states as follows:
The trial court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusion, opinions, or theories of an attorney or an expert.
Under the express provisions of the above article, only "writings" are protected from discovery by the "attorney work product rule." In the instant case, Mrs. Whittenburg seeks audiotape recordings of statements and transcripts of those recorded statements. The Louisiana Supreme Court recently reiterated in Landis v. Moreau, 00-1157 (La.2/21/01), 779 So.2d 691, its position that audiotapes are not protected from discovery by La. C.C.P. art. 1424 because "the attorney work product exception to general discovery refers only to writings and does not include tangible things such as videotapes, films, or photographs." Id. at 697. The court explained as follows:

*166 1978 La. Acts 686, § 2 excludes "writings, records, or other accounts" reflective of an attorney's or expert's mental impressions, while La.Code Civ. P. art. 1424 excludes only "writings." The purposes of the work-product rule are both to provide an attorney a "zone of privacy" within which he is free to evaluate and prepare his case without scrutiny by his adversary and to assist clients in obtaining complete legal advice. Moreover, the privilege created by the work product doctrine is qualified, not absolute.
Id. at 697. (Footnote and citation omitted.) Thus, the trial court correctly compelled production of the audiotaped statements of Mr. Whittenburg's co-employees.
Concerning the transcripts of the statements, a court determining whether a "writing" is discoverable must first consider two questions: (1) Were the writings "obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent?" and (2) Were the writings obtained or prepared "in anticipation of litigation or in preparation for trial?" Only if the answer to both those questions is "yes" should the court consider the next issuei.e., whether the party seeking the writings will be unfairly prejudiced in preparing his claim or defense or will face undue hardship or injustice.
The items sought by Mrs. Whittenburg in the instant case do not fall under the provisions of La. C.C.P. art. 1424 because the answer to both of the above questions is "no" in the instant case. First, the writ application and attached documents reveal that the items sought were not "obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent." The writings sought by Mrs. Whittenburg in this case are transcripts of recorded statements, taken by the company providing workers' compensation insurance to the employer of Mrs. Whittenburg's deceased husband. No "attorney, surety, indemnitor, expert, or agent" was involved; statements taken by insurers are not covered by the express language of La. C.C.P. art. 1424. Moreover, the Louisiana Supreme Court stated as follows in Landis:
In Ogea v. Jacobs, 344 So.2d 953 (La. 1977), this court held that the written opinion of an employee who was neither an attorney nor an expert was not protected from discovery under the "mental impression" provision of La.Code Civ. P. art. 1424. Therefore, we conclude that if the audiotapes contain any mental impressions, conclusions, opinions, or theories of the investigator, then those impressions are not immune from disclosure pursuant to 1978 La. Acts 686, § 2 or La.Code Civ. P. art. 1424.
Id.
Second, nothing in the writ application indicates that the items were obtained or prepared "in anticipation of litigation or in preparation for trial." The statements were taken from Mr. Whittenburg's former co-employees and involve events occurring within hours of Mr. Whittenburg's death, which occurred on July 22, 1999. Two of the statements were taken by the Zurich adjuster assigned to investigate Mr. Whittenburg's death on July 30, 1999; the other five where taken on August 27, 1999. The statements were taken as a part of Zurich's investigation of Mr. Whittenburg's death, not "in anticipation of litigation or in preparation for trial."
Moreover, under the circumstances of this case, Mrs. Whittenburg would be unfairly prejudiced in preparing her claim or defense or will face undue hardship or injustice if the statements are not produced. Mrs. Whittenburg claims that Zurich's denial of her claim was arbitrary and capricious, entitling her to penalties and attorney fees under LSA-R.S. *167 23:1201.2. Whether or not the refusal to pay workers' compensation benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action. Holloway v. Hilton Hotels Corp., 99-2393, p. 12 (La.App. 4 Cir. 9/15/99), 743 So.2d 797, 803. The failure to pay is not arbitrary and capricious when it is based on a substantial bona fide factual contention. Id. Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action. Id. The statements sought by Mrs. Whittenburg are apparently the only record of the events known to Zurich at the time it denied Mrs. Whittenburg's workers' compensation claim. Without having access to the statements, Mrs. Whittenburg has no way to prove her arbitrary and capricious claim.
Accordingly, we affirm the trial court's order compelling production of the statements and transcripts.
WRIT GRANTED; TRIAL COURT JUDGMENT AFFIRMED.
BYRNES, J., Dissents with Reasons.
BYRNES, J., dissenting.
I respectfully dissent in part based on my conclusion that the worker's compensation judge erred in part in granting the plaintiff, Donna L. Whittenburg's motion to compel production of relator, Zurich's documents.
Following the fatal accident, Zurich assigned the claim to Glenn Giles, one of its adjusters. Giles hired Stephen Gilbert, whom Zurich characterized as a field adjuster, and who was employed by Zylicz & Associates. Giles and Gilbert were hired and worked for Zurich, and they were Zurich's agents.
The written transcripts of the statements taken from the RMI Inspectorate ("RMI") employees were done in investigation of the fatal accident in anticipation of a worker's compensation claim that ultimately could result in litigation. The written transcripts of the statements constitute Zurich's work product and they are not discoverable under La. C.C.P. art. 1424. The plaintiff has not met her burden of proving that denial of production of these transcripts will unfairly prejudice her or cause her undue hardship or injustice in preparing either her claim for benefits or her claim for penalties and attorney's fees. See Sass v. National Fire Ins. Co., 96-2332, p. 3 (La.App. 4 Cir. 3/5/97), 689 So.2d 742, 743, writ denied, 97-0975 (La.5/30/97), 694 So.2d 249. La. C.C.P. art. 1424 applies only to writings and does not include tangible things such as videotapes, films or photographs. Moak v. Illinois Central R.R. Co., 93-0783 (La.1/14/94), 631 So.2d 401, 403.
Accordingly, I would reverse the ruling of the worker's compensation judge in part, and would deny the plaintiff's motion for Zurich's production of any writings, prepared by Zurich's agent in anticipation of litigation.