630 So.2d 733 (1994)
Ellen FREEMAN
v.
POULAN/WEED EATER.
No. 93-C-1530.
Supreme Court of Louisiana.
January 14, 1994.
*735 William T. Allison, Shreveport, for applicant.
Eskridge E. Smith, Jr., Shreveport, for respondent.
HALL, Justice.[*]
In this workers' compensation case, the administrative hearing officer, after finding that plaintiff's carpal tunnel syndrome and resulting partial disability was caused by an on-the-job accident and that plaintiff was unable to earn wages equal to her pre-accident wages, rendered judgment ordering that plaintiff be paid temporary total disability benefits in the amount of $138.61 per week until such time as the defendant had provided a minimum of 26 weeks of meaningful rehabilitation, that defendant pay to plaintiff 55 weeks of past due total temporary disability in the amount of $7,623.55 from September 11, 1990 through the date of the hearing officer's order, September 27, 1991, that the defendant pay interest on all past due amounts together with penalties of 12% thereon, and that defendants pay attorney's fees in the amount of $5,000. Both the plaintiff and the defendant appealed the hearing officer's judgment. A five-judge panel of the court of appeal, with one judge dissenting, affirmed the judgment in part, reversed in part, and remanded. Freeman v. Poulan/Weed Eater, 618 So.2d 618 (La.App. 2d Cir.1993). The court of appeal affirmed, only to the extent of holding that plaintiff's injury and resulting partial disability was caused by her employment. The court of appeal otherwise reversed, setting aside the award of past due compensation benefits, the order to provide rehabilitation and to pay temporary total disability benefits during the period of rehabilitation, and the award of penalties and attorney's fees. The court of appeal remanded for recalculation of the amount of the weekly benefits paid to the plaintiff.
Plaintiff applied for writs in this court, seeking reinstatement of the hearing officer's judgment, an increase in attorney's fees, and further recalculation of the amount of weekly benefits due. Writs were granted, 625 So.2d 155 (La.1993), primarily to consider plaintiff's argument that the court of appeal failed to apply the proper clearly wrong/manifest error standard of appellate review with the court of appeal, instead, basing its reversal on a reevaluation of the evidence particularly as it related to plaintiff's ability at the time of trial to earn wages equal to or 90% of her pre-injury wages, a factual determination that controls whether plaintiff is entitled to rehabilitation services or, alternatively, supplemental earning benefits. For reasons expressed in this opinion, we reverse the judgment of the court of appeal in part, amend and reinstate in part the judgment of the hearing officer, and remand for entry of judgment and reconsideration of the amount of the weekly benefits.

I.
The basic facts are accurately set forth in the court of appeal's thorough opinion as follows:
Ellen Freeman was hired as a warehouse worker by Poulan/Weed Eater on November 2, 1987. On November 11, 1988, plaintiff injured her right wrist while lifting two reels of chain with a combined weight of 50 pounds. She reported the injury to her supervisor, who filled out an accident report. Plaintiff was then sent to *736 Dr. Don Angle, the company doctor. Dr. Angle diagnosed plaintiff's injury as a sprained wrist. Plaintiff was given antiinflammatory medication and allowed to return to work.
On November 30, 1988, plaintiff again injured her wrist while lifting boxes at work. Dr. Angle recommended that plaintiff wear a splint on her right wrist while on duty and refrain from lifting objects over 15 pounds. Plaintiff returned to work wearing the splint, but her wrist still continued to ache. Plaintiff's left wrist soon began to hurt because she was favoring her right wrist. Eventually, plaintiff was wearing splints on each wrist while at work, but her wrists still continued to hurt. Plaintiff continued to see Dr. Angle, who referred her to Dr. David Adams on February 28, 1989. As a result of nerve conduction studies performed by Dr. Adams on plaintiff's wrists, plaintiff sought treatment from Dr. Clinton McAlister of the Bossier Orthopedic Clinic on March 20, 1989.
Dr. McAlister diagnosed plaintiff's injury as carpal tunnel syndrome. On April 23, 1989, Dr. McAlister performed carpal tunnel release surgery on the plaintiff's right hand. On June 16, 1989, Dr. McAlister released plaintiff to return to work with certain restrictions. However, the restrictions placed on her did not permit plaintiff to return to her job as a warehouse worker. Plaintiff has not returned to work since her surgery.
Poulan/Weed Eater retained Carol Gill and Sonya Kilpatrick, rehabilitation counselors with Crawford and Company, to develop a plan for vocational rehabilitation for the plaintiff. Plaintiff initially wanted to complete a four-year college degree program in management. However, Poulan/Weed Eater refused this request, and Crawford and Company was instructed to locate employment for plaintiff for which she was qualified by her training and experience. Certain jobs were located for the plaintiff, but she never applied for any of these jobs. Meanwhile, plaintiff enrolled in a four-year college degree program in management on June 4, 1990. Eventually, Poulan/Weed Eater referred plaintiff to Dr. Gordon Mead to make sure that plaintiff was capable of performing the jobs which had been found for her. Dr. Mead's medical examination determined that plaintiff was capable of performing at least two jobs which had been located for her by Crawford and Company.
On September 10, 1990, Poulan/Weed Eater terminated worker's compensation benefits and this claim resulted. The case was tried before the administrative hearing officer, who entered a judgment on September 27, 1991. The hearing officer found that plaintiff's carpal tunnel syndrome was job-related, and this occupational disease resulted in a disability which restricted plaintiff's work ability to the lifting of 10 pounds frequently and 25 pounds occasionally. Based upon these restrictions, Ellen Freeman was deemed unable to return to her previous employment as a warehouse worker.
The hearing officer also found that Ellen Freeman was offered work for 40 hours per week in the four full weeks prior to her injury, but regularly and at her own discretion she chose to work less than 40 hours per week. Based on the hours she actually worked in the four full weeks prior to the alleged injury, plaintiff's average weekly wage was found to be $207.91 and her weekly compensation rate was found to be $138.61. This amount was paid by Poulan/Weed Eater to her for a total of 72 weeks from April 24, 1989, to September 10, 1990. The hearing officer did not include fringe benefits in the calculation of plaintiff's average weekly wage as no proof of the amount of these benefits was offered at trial.
The hearing officer found Poulan/Weed Eater was arbitrary and capricious in the rehabilitation efforts by it in this matter. The hearing officer determined that the jobs identified by Crawford and Company did not form a reasonable basis for termination of compensation benefits on September 10, 1990. In finding that the actions of Poulan/Weed Eater in terminating plaintiff's benefits were arbitrary and capricious, the hearing officer awarded penalties in the amount of 12 percent and *737 attorney fees in the amount of $5,000. The hearing officer also ruled that the plaintiff should be placed on temporary total disability benefits in the amount of $138.61 per week until such time as the defendant has provided a minimum of 26 weeks of meaningful rehabilitation. The defendant was also ordered to pay plaintiff 55 weeks of past-due total temporary disability in the amount of $7,623.55 for the period from September 11, 1990, through the date of the hearing officer's judgment.
The court of appeal affirmed in part, reversed in part and remanded the matter to the hearing officer. The court affirmed the hearing officer's determination that plaintiff's carpal tunnel syndrome was a result of her employment with Poulan/Weed Eater. However, the court reversed the hearing officer's judgment awarding benefits, rehabilitation and penalties and attorney's fees. The court concluded that since plaintiff was qualified for the positions located for her by Crawford and Company, but failed to apply for them, she had failed to prove that she was unable to earn 90% of her pre-injury wages so as to entitle her to supplemental earnings benefits. The court of appeal set aside the hearing officer's award of 55 weeks of past-due temporary total disability benefits. The court then confronted the plaintiff's entitlement to rehabilitation. For the same reasons set out for plaintiff's failure to prove her inability to earn 90% of her wages, the court found that plaintiff had also failed to prove that she could not earn wages equal to her pre-injury wages and, as a result, was not entitled to rehabilitation benefits under LSA-R.S. 23:1226. The court reversed the hearing officer's award that plaintiff be paid temporary total disability benefits until a minimum of 26 weeks of meaningful rehabilitation be provided. The court concluded that it was not arbitrary and capricious for the employer to rely on Dr. Mead's opinion that plaintiff could perform the jobs located by the rehabilitation counselors in terminating benefits and reversed the hearing officer's award of penalties and attorney's fees. Finally, the case was remanded for the hearing officer to determine whether the benefits paid to plaintiff were properly calculated.
The dissenting judge opined that the hearing officer was not manifestly erroneous in concluding that plaintiff lacked qualifications for the manager trainee jobs that were located by the rehabilitation counselors, and would have affirmed the judgment of the hearing officer.

II.
We note at the outset that the employer contended before the hearing officer and the court of appeal, and now contends in this court, that plaintiff's carpal tunnel syndrome was not caused by her employment activities. Both the hearing officer and the court of appeal rejected defendant's contentions in this regard. After review, we agree with the findings of the hearing officer and the court of appeal, for the reasons expressed in the court of appeal opinion, and affirm this finding without further discussion.
We further note that we agree with the court of appeal's conclusion that the case should be remanded for further consideration of the amount of weekly compensation benefits due, for the reasons expressed by the court of appeal. We therefore affirm this part of the court of appeal's judgment without further discussion.
The primary issues we consider are, first, whether the hearing officer was manifestly erroneous or clearly wrong in finding that the evidence did not establish that plaintiff was able to earn wages equal to her preinjury wages, and, then, if the hearing officer's determination in this regard was not clearly wrong, what the appropriate award of worker's compensation benefits is under the facts and circumstances of this case.

III.
In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The appellate *738 court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Rosell, supra; Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.
The plaintiff's accident and resulting injury occurred in 1988 and plaintiff's entitlement to worker's compensation benefits is governed by the law in effect at that time. In regard to entitlement to rehabilitation services, the principal thrust of plaintiff's contentions before this court, LSA-R.S. 23:1226[1] provided in pertinent part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
B. For the purposes of this Section only, "suitable gainful employment" means employment or self-employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of the injury.
* * * * * *
E. When it appears that rehabilitation is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to reasonable and proper rehabilitation services for a period not to exceed twenty-six weeks, which period may be extended for an additional period not to exceed twentysix additional weeks if such extended period is determined to be necessary and proper by the director, or upon his refusal, by the court. However, no employer or insurer shall be precluded from continuing such rehabilitation beyond such period on a voluntary basis....
F. Temporary disability benefits paid pursuant to R.S. 23:1221(1) shall include such period as may be reasonably required for training in the use of artificial members and appliances and shall include such period as the employee may be receiving training or education under a rehabilitation program pursuant to this Section.
As noted by the court of appeal, the initial inquiry is whether a claimant is entitled to rehabilitation services. Works v. Trinity Universal Insurance Company, 501 So.2d 1045 (La.App. 2d Cir.1987), writ denied 503 So.2d 480 (La.1987). As LSA-R.S. 23:1266(A) provides, an employee is entitled to rehabilitation upon his or her suffering a compensable injury that "precludes the employee from earning wages equal to wages earned prior to the injury." Plaintiff bears the burden of proving such an inability to earn pre-injury wages by a preponderance of the evidence. If plaintiff carries her burden, *739 the issue then becomes what constitutes rehabilitation. Works, supra. A claimant is entitled to meaningful rehabilitation for a minimum of 26 weeks, but not longer than 52 weeks, while being paid temporary total disability benefits. LSA-R.S. 23:1226. The purpose of the rehabilitation statute is to educate and, by so doing, increase the job marketability of employees who, due to their injuries, cannot return to their former positions. Sino v. Chalmette General Hosp., 489 So.2d 311, 313 (La.App. 4th Cir.1986); Koslow v. E.R. Desormeaux, 428 So.2d 1275 (La.App. 3rd Cir.1983); Harris v. Rumold, 518 So.2d 9 (La.App. 4th Cir.1987). It is abundantly clear that the statute's intent is not to require employers to unnecessarily rehabilitate employees who are able to return to work but, for reasons unrelated to their injuries, refuse to do so. Harris, supra, 518 So.2d at 13.
Under LSA-R.S. 23:1221(3)[2], the plaintiff is entitled to supplemental earning benefits if the injury has resulted "in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury ..." R.S. 23:1221(3)(a). The injured employee thus bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn that amount under the facts and circumstances of the individual case. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008 (La.1989). Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Daigle, supra, at 1008-9; Allen v. City of Shreveport, 618 So.2d 386, 389 (La.1993). The amount of supplemental earnings benefits are then based on the difference between the average weekly wage and the plaintiff's earning capacity after the injury.

IV.
Unlike the rehabilitation provisions of the 1989 amendment to LSA-R.S. 23:1226 which focuses on job placement, the rehabilitation *740 provisions of the prior law applicable to this case focused on training and education. After rejection of the four-year college curriculum recommended by the vocational rehabilitation counselor, which exceeded the employer's obligation, the employer directed that rehabilitation efforts be limited to job placement or on-the-job training. The rehabilitation consulting firm ultimately came up with a list of 16 manager trainee jobs, only three of which had present openings. One, a position with Baker's Shoe Store, had a base salary of $150 per week, less than 90% of plaintiff's pre-injury wages. The other two, positions at Shoney's and McDonald's, carried salaries in excess of plaintiff's pre-injury earnings. It is entirely speculative as to whether plaintiff would have been hired for either of these positions since both required or preferred previous management experience which plaintiff did not have, as found by the hearing officer. This finding was not clearly wrong. Although plaintiff had held various clerical and other jobs, none involved management responsibilities.
The rehabilitation program undertaken by the employer was never completed because plaintiff never interviewed for the listed positions. Just whose fault this was is problematical. By the time the list was presented to plaintiff, many months had passed since the rehabilitation firm was hired by the employer, and she was enrolled in a business management college curriculum with tuition paid by the state rehabilitation office, consistent with the rehabilitation counselor's first recommendation. Plaintiff testified that after the list was given to her she was told to wait until after Dr. Mead's exam to make any contacts, and that she was never advised of the results of Dr. Mead's exam. There was only one subsequent contact, by telephone, between the rehabilitation counselor and plaintiff. Plaintiff testified the counselor called and advised that compensation was being terminated because she had made no contacts with the potential employers. The counselor testified that plaintiff said that she was in school and had an ill daughter and did not have the time to make the contacts. The counselor then advised plaintiff that compensation benefits were being terminated, sent a letter to that effect a couple of days later, and then closed her file.
The finding by the hearing officer that the evidence failed to establish the existence of jobs available to plaintiff, based on her education and experience, in which she could earn wages equal to her pre-accident wages is not clearly wrong. It follows that plaintiff was entitled to meaningful rehabilitation as found by the hearing officer. It also follows that the mere furnishing of a list of possible manager trainee jobs does not constitute a program of meaningful rehabilitation, training and education, at least as envisioned by the former statute.
For these same reasons, we conclude that the evidence does not establish that plaintiff was able to earn 90% of her pre-injury wages. As a result of this inability, she is alternatively entitled to supplemental earnings benefits. The evidence does show several jobs which plaintiff could have clearly held paying in the range of $4.00 per hour. Thus, supplemental earnings benefits should be calculated on the difference between plaintiff's pre-injury wage of $5.50 per hour and her earning capacity of $4.00 per hour.
However, we question the judgment of the hearing officer ordering retraining of the plaintiff and payment of temporary total disability benefits until defendant has provided a minimum of 26 weeks of meaningful rehabilitation. It is clear that by the time of trial, plaintiff was committed to pursuit of a college education in which she was maintaining excellent grades. Any on-the-job training or vocational education proposed by the employer at this time would not likely be acceptable to plaintiff and would probably be counter productive to her rehabilitation and reentry into the work force. However, the fact that plaintiff, several months after the rehabilitation firm had been hired but before any rehabilitation program acceptable to the employer had been proposed, proceeded on her own in a program of meaningful rehabilitation should not entirely relieve the employer of its rehabilitation obligation under the statute. Under the unique facts of this case, considering plaintiff's pursuit of a college education through the state vocational program *741 as a program of meaningful rehabilitation, the employer is obligated under the statute to pay temporary total disability benefits during the course of such program, not to exceed 52 weeks.
Accordingly, in order to accommodate the requirements of the statute with the facts of this case, we will amend the judgment of the hearing officer to provide that defendant pay to plaintiff temporary total disability benefits for a period of 52 weeks beginning with the enrollment of plaintiff in college in June 1990, together with any reasonably necessary expenses, such as books and supplies, incurred by plaintiff in connection with her college course during said 52 week period.[3]
Since the employer paid supplemental earnings benefits in an amount equal to temporary total disability benefits through September, 1990, it should be given a credit for the amounts paid from June through September of that year against this obligation. Also, since the obligation to pay temporary total disability benefits during 52 weeks of rehabilitation to June of 1991 will fulfill defendant's obligation for temporary total disability benefits and overlaps with the hearing officer's award of 55 weeks of such benefits from September 11, 1990 to the date of the hearing officer's judgment in September 1991, that award is deleted. Since it was not established at trial that plaintiff was able to earn 90% of her pre-accident wages, she is entitled to supplemental earnings benefits beginning in June, 1991, taking into consideration an established earning capacity of $4.00 per hour.
Because of the abrupt termination of worker's compensation benefits and rehabilitation efforts by defendant, we do not disturb the hearing officer's award of penalties and attorney's fees. Plaintiff is, however, awarded $2,500 additional attorney's fees for services rendered in connection with the appeal and writ application.

V.
For the reasons assigned, the judgment of the court of appeal is reversed in part and the judgment of the hearing officer is reinstated in part and amended. This case is remanded to the worker's compensation hearing officer for entry of judgment in accordance with this opinion and for reconsideration of the amount of weekly benefits awarded. All costs are assessed to the defendant.
REVERSED IN PART; HEARING OFFICER'S JUDGMENT REINSTATED IN PART AND AMENDED; AND REMANDED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Justice Dennis was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] LSA-R.S. 23:1226 was amended by Acts 1989, No. 454, § 6, effective January 1, 1990, to provide a more detailed outline of rehabilitation. The amended statute stated that "[t]he goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs." LSA-R.S. 23:1226(B)(1). In order to accomplish this goal the new statute lists options of which the first appropriate method must be chosen:

(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty six weeks but not more than one year).
(g) Self-employment.
[2] LSA-R.S. 23:1221(3) provides in pertinent part:

(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of the injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or selfemployment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. (ii) For purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
[3] We note that the employer will not be liable for expenses that are covered by the state vocational rehabilitation scholarship that plaintiff received. LSA-R.S. 23:1226(A) specifically entitles an employer to "utilize programs provided by state and federal agencies for vocational education when conveniently available ..."