I .DOWNING, J.
North Oaks Medical Center (North Oaks) appeals the decision of a workers’ compensation judge (WCJ) which found that the neck injury of Anna Novak, appel-lee, resulted from lifting a patient in the course and scope of her employment while working at North Oaks and not from a subsequent automobile accident.
For the following reasons, we affirm.

PROCEDURAL HISTORY

Anna Novak, a nursing assistant at the North Oaks Medical Center, allegedly injured her back while lifting a bedridden patient on September 27, 1997. North Oaks claimed the neck pain is not a work-related injury.
Novak filed a claim for workers’ compensation on March 5, 1999; North Oaks answered on March 23,1999. At the hearing on September 29, 1999, the WCJ found that the cervical neck injury she complained of was work related. North Oaks was ordered to compensate Ms. Novak for the neck injury. Novak’s claim for penalties, alleging arbitrary and capricious refusal to pay her benefits, was denied due to a conflict in and lack of certainty of the medical testimony. North Oaks appeals the judgment alleging the trial court erred in finding that Novak’s cervical problems were a result of the work related accident.

STANDARD OF REVIEW

In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by *342 the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737. On legal issues, the appellate court exercises | Sits constitutional duty to review questions of law and render judgment on the record. Chaisson v. Oceanside Seafood, 97-2756, p. 3 (La.App. 1st Cir.6/29/98), 713 So.2d 1286, 1288.

HISTORY

While lifting a bedridden patient at work on September 27, 1997, Ms. Novak felt a “catch” in her back. Ms. Novak was sent to the North Oaks emergency room and was examined for the pain in her lower back. Initially she only reported lower back pain to her supervisor. Ms. Novak testified that, on her way home, after being discharged from the emergency room, she experienced pain and tingling in her arms and hand and her neck also began to hurt. Ms. Novak had been advised at the emergency room to remain at home for the following three days. She did not report her neck pain until September 30, 1997, three days after the incident. Ms. Novak saw Dr. Daunis, a doctor in the occupational health department of North Oaks, on September 30, 1997, and was examined for her complaints. On this visit although he noted bilateral tenderness over the neck with pain on range of motion, Dr. Daunis found no indication of cervical disc problems. He performed no diagnostic tests on the cervical spine, and referred her to a work-conditioning program. Dr. Daunis had a follow-up visit with Ms. Novak on October 3,1997 and a final visit on October 10, 1997 at which Ms. Novak continued to complain of pains associated with the neck. Ms. Novak was then referred to Dr. McAf-ee, an orthopedist practicing at North Oaks.
On October 30, 1997, Dr. McAfee found that Ms. Novak’s range of motion was “self limited.” He diagnosed cervical and lumbar strain, and ordered physical therapy. He ordered no further tests even though she was |4still complaining of the neck pain and tingling and numbness in her upper extremities. The physical therapist at North Oaks, Greg Leyrer, testified at deposition that although sixteen treatments were ordered, Ms. Novak attended only four. He also noted that his tests indicated that Ms. Novak was exaggerating her symptoms.
On February 3, 1998, Ms. Novak was seen by a neurologist with North Oaks, Dr. Mussarat, for spinal evaluations. Dr. Mussarat ordered EMG/NCS studies and a lumbar MRI, but not a cervical MRI. These tests showed some minor lumbar disc problems, but nothing that could explain the neck pain. Dr. Mussarat reported that Ms. Novak’s cervical “weakness” was “not real.”
On February 18, 1998, Ms. Novak was involved in an automobile accident, but testified that the accident was minor and that she was neither hurt nor sought medical treatment. North Oaks claims this accident was probably the cause of Ms. Novak’s neck injury, but no evidence regarding the severity of her injuries or lack therefore or the amount of damage to the automobiles was presented to contradict her testimony. She did not seek medical attention at this time.
On April 6, 1998, Gena Wyble, the workers’ compensation claims adjuster for North Oaks, sent Ms. Novak a letter informing her that the medical documentation indicated she was now able to go back to work and that her benefits were going to be discontinued. Her workers’ compensation benefits were subsequently terminated.
On October 22, 1998, Ms. Novak saw Dr. Logan, an orthopedic surgeon of her own choosing, for the persistent neck pain. *343 Ms. Novak failed to mention the prior automobile accident. Dr. Logan ordered a cervical MRI which indicated that she had several herniated discs. After ordering a lsmyelogram and post-myelogram CT scans, Dr. Logan Diagnosed Ms. Novak as a surgical candidate for C5-6 — C6-7 fusion. This doctor attributed the cause of this injury to her work-related accident on September 27,1997.

WORK-RELATED INJURY

By assignment of error, North Oaks claims the trial court erred in finding that Ms. Novak’s cervical problems resulted from the workplace accident which occurred on September 27, 1997. North Oaks states that following the workplace incident, Ms. Novak was treated by Drs. Daunis, McAfee, and Mussarat and by physical therapist, Greg Leyrer. None of the treatments, evaluations or tests performed by these medical professionals found any indication of cervical disc problems. North Oaks points out that in February 1998, Ms. Novak was involved in an automobile accident, and in October 1998, Dr. Logan did a cervical MRI which indicated she did indeed have several herniated discs in her neck. The thrust of North Oaks’ argument focuses on an apparent inconsistency in Dr% Logan’s deposition testimony where he indicated that the mechanism of injury described by Ms. No-vak (lifting the patient) would not have caused her cervical problems. North Oaks claims, therefore, that since Ms. Novak has no medical evidence to establish that her cervical problems were caused by the incident at the hospital, North Oaks cannot be held liable for them. North Oaks also points out that Ms. Novak did not disclose her automobile accident earlier in the year to Dr. Logan; therefore, it asserts Dr. Logan did not have all of the facts before him to determine the cause of her injuries. We disagree.
First, Ms. Novak testified that she was neither hurt nor sought medical attention after her automobile accident in February, 1998. In fact, she stated that her symptoms were no different after the wreck than they were before 1 fithe wreck. North Oaks presented no evidence to rebut her testimony or dispute the seriousness of her injuries or lack thereof or the amount of property damage to the vehicles involved. Thus, it is not unreasonable for Ms. Novak to fail to mention a minor automobile accident eight months after it happened.
Second, Dr. Logan was the first physician Ms. Novak saw of her own choosing,[1] who immediately ordered the first and only cervical MRI. This MRI pinpointed the probable cause of her neck pain and hand numbness. Dr. Logan diagnosed cervical irregularities at the C5-6 and C6-7 and attributed their likely cause to Ms. Novak’s on the job injury on September 27, 1997. As no earlier cervical MRI was performed and since the North Oaks doctors were unable to attribute her symptoms to any other cause, it was not manifestly erroneous for the trial court to credit Dr. Logan’s conclusions.
Third, while portions of Dr. Logan’s deposition were ambiguous concerning the cause of the herniated discs, he did attribute their cause to lifting the patient. In fact, Dr. Logan stated that, “I think that her symptomology is compatible with her injury.” Dr. Logan went on the state that a lifting injury can cause this type of symptomology. Dr. Logan further testi *344 fied that lifting does not cause boney hypertrophy, but it can render a less than optimal disc symptomatic.
Dr. Logan stated that the lifting injury could have contributed to the cascade of degeneration and protrusion, extrusion, and herniation of the disc. Even assuming arguendo that lifting the patient was not the cause of the cervical herniated discs, an employee’s preexisting disease or infirmity does not disqualify his workers’ compensation claim if the work-related injury Neither aggravated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985). In a workers’ compensation case, a claimant’s disability is presumed to have resulted from an accident if before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Id.
Ms. Novak testified she had never experienced any problems with numbness and tingling in her hands or arms, nor any pain in her neck prior to this accident. Here Ms. Novak is entitled to the benefit of the presumption as her symptoms appeared, and continued, commencing with the on-the-job accident and the medical evidence shows a reasonable possibility of causal connection. North Oaks has failed to rebut this presumption.
The WCJ, who was in the best position to weigh and evaluate the evidence, heard the testimony of the parties and determined Anna Novak’s neck injury was caused by the accident she had while working for North Oaks Medical Center on September 27, 1997. Upon review of the record, and considering applicable legal standards, we find no manifest error or legal error in the WCJ’s conclusion that Ms. Novak carried her burden of proving that the cervical injury was caused by a work-related accident entitling her to workers’ compensation benefits.

JCONCLUSION

Based on the foregoing, we hereby affirm the decision made by the WCJ. Costs of this appeal are assessed to the appellant.
AFFIRMED.

. Ms. Novak was forced to seek court intervention before being allowed to see the doctor of her choice.