I,Judge TERRI F. LOVE.
Plaintiff, Elaine Thompson Williams, appeals the judgment of the trial court finding Defendant, Orleans Parish School Board not liable for the illness that she allegedly acquired. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Elaine Thompson Williams (“Mrs.Williams”) filed suit against the Orleans Parish School Board (“School Board”), alleging she acquired a host of medical conditions as a result of working in an asbestos ridden environment. Mrs. Williams is a sixty-year-old teacher. Mrs. Williams began working for the School Board at Carter G. Woodson Junior High School (“Woodson”) in 1980 as a teacher for special education and emotionally disturbed children. In August of 1998, Mrs. Williams allegedly began experiencing shortness of breath, weakness, headaches and swallowing problems. She was given an asthma pump to be used three times per day. Additionally, she was diagnosed with a bacterial infection in her stomach. In August of 1998, Mrs. Williams relayed her medical problems to the Office of Worker’s Compensation. She remained at Woodson until October 23, 1998, whereupon she took medical leave.
li>Due to excessive rain, there were leaks in the auditorium and mildew in the library at Woodson. In 1998, Walker Hill, an environmental group, tested the environment within Woodson and determined that the auditorium and the library needed to be closed. However, the environmental group determined that the classrooms did not have any problems and that they were fit for use.
This matter went to trial on June 14, 2000. The trial judge found in favor of the School Board and ordered the parties to pay their own respective costs. Mrs. Williams now appeals this judgment.
DISCUSSION
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 *293 (La.7/1/97), 696 So.2d 551, 556. Those findings are not to be reversed on appeal unless they are unreasonable in light of the record. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). From our review of the record, there was absolutely no basis to award Mrs. Williams recovery for her alleged injuries. Not one physician could testify that Mrs. Williams’ ailments were related to the conditions in the school. Furthermore, there was substantial evidence presented which implicated other elements as possible causes for Mrs. Williams’ sickness. For these reasons, we affirm the judgment of the trial judge.
At trial, Mrs. Williams testified that she became extremely ill as a result of working at Woodson. She claims that she began experiencing wheezing and shortness of breath due to what she alleged as the existence of asbestos and other deplorable conditions in the building. Mr. Gary Stiebing, the principal at Woodson, testified that the school was in poor condition when he began working there in 1990. He closed the auditorium due to leaks but did not close the library |suntil 1999, after Walker Hill recommended that both facilities be closed. In 1998, the roof and floors were replaced and a new air-conditioning system was installed. Ted Harris, (“Mr.Harris”), an employee of the Orleans Parish management group, supervised the renovations to the school. He testified that the floor tiles contained 1% asbestos and that since the tiles were non-fibrous, the asbestos could not be released into the air. He further testified that the ceiling in the auditorium was made of metal and plaster and that some of the plaster contained an asbestos compound. In the summer of 1998, the auditorium began to leak and the management group had a company come in and remove the asbestos from the building. When asked whether the existence of asbestos in the auditorium could have possibly become airborne, Mr. Harris responded that it could not. He explained that Woodson operated on a chilled water system and not a connected duct system; therefore, each air conditioning unit only cooled two rooms at a time.
Mrs. Williams saw four physicians in relation to her alleged illnesses and injuries. All of the doctors were deposed and at trial, their depositions were admitted in lieu of testimony. Dr. Johnny Gibson, a general surgeon in abdominal surgery and breast surgery testified that he saw Mrs. Williams for benign breast lesions. He testified that he could not relate her lesions to the conditions present in the school and indicated that they are typically hormone related. Dr. Stephen Price, a gastroenterologist testified that he saw Mrs. Williams because she suffered from difficulty swallowing. He diagnosed her as having a cervical web, which is caused by a common bacteria present in environmental elements such as water and air. However, he testified that nothing in the environment at the school would have caused the cervical web. Dr. Price further testified that the bacteria is so common that it is present in 50% of people over 50 years of age and 60% of Lpeople over 60 years of age. Dr. Douglas Swift, a specialist in occupational medicine treated Mrs. Williams for asthma. He testified that there were other factors which probably contributed to Mrs. Williams acquisition of asthma. In particular, she had smoked approximately one pack of cigarettes per week for 10-15 yeas. He deemed this a very significant factor even though she had quit smoking approximately a year before seeing him for the disease. Furthermore, he noted that Mrs. Williams had had multiple throat infections and bronchitis as a child, which can also be a precurser to asthma. Lastly, Dr. Swift testified that asbestos could not have caused Mrs. Williams symptoms unless the floor tiles *294 were being constantly grinded. And, in any event, even if the tiles had released asbestos into the air, asbestos causes a different type of reaction than the one that Mrs. Williams suffered. Finally, Dr. Henry Evans, a general physician testified that he recommended Mrs. Williams take a leave of absence from work based upon her subjective complaints. He deferred determination as to causation to Dr. Price, who, as stated previously, could not relate any of Mrs. Williams’ symptoms to her work conditions.
At the conclusion of the trial, the judge declined to rule on the matter until Mrs. Williams could be evaluated by a psychologist. Yvonne Hardaway Osborne, Ph.D., (“Dr.Osborne”) evaluated Mrs. Williams on July 28, 2000; August 1, 2000; September 14, 2000 and September 18, 2000. Dr. Osborne compiled an evaluative report on September 18, 2000. She reported that Mrs. Williams complained of depression, social withdrawal, fear of germs, problems sleeping, fatigue, anxiety, restlessness and morbid dreams. Due to her fear of germs, she washes her hands constantly, cleans her food with soap and water and never eats at restaurants. Mrs. Williams was also under stress because she was not being | .compensated during her medical leave. Dr. Osborne diagnosed her with Adjustment Disorder with Mixed Anxiety, Depressed Mood and Obsessive-Compulsive Disorder. Dr. Osborne assessed that Mrs. Williams’ disorders were due to lack of a support group, occupational problems and health problems. She recommended that Mrs. Williams undergo psychotherapy and that she be evaluated for pharmaco-logic intervention. She further concluded that Mrs. Williams should be regarded as high risk for a psychotic episode.
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733. In all, the testimony presented during this matter provided little support for Mrs. Williams allegations that the conditions at Woodson caused her to become ill. Absent her own testimony, there is no independent corroboration that the school environment caused her ailments. Presented with her allegations and the aforementioned physician testimony, the trial judge found against Mrs. Williams. When there are two permissible views of evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. See Freeman, 630 So.2d at 737. “If the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990). Bound by these guideposts, we affirm the judgment of the trial judge.
| .CONCLUSION
For the reasons outlined herein, we affirm the judgment of the Office of Worker’s Compensation finding that Mrs. Williams’ ailments were not caused by the condition at Woodson.
AFFIRMED.