BELSOME, J.,
dissents with reasons.
hi respectfully dissent. A reasonable factual basis exists for the district court’s denial of the peremptory exception of prescription. Accordingly, the writ should be denied.
The Supreme Court has consistently held that prescriptive statutes are strictly construed against prescription. As recently as Carter v. Haygood, the Louisiana Supreme Court reiterated the rule that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished, stressing that when a court is faced with two possible constructions it should adopt that which favors maintaining an action, as opposed to barring it. Carter v. Haygood, 2004-0646, pp. 10-11 (La.1/19/05), 892 So.2d 1261, 1268.
The facts outlined by the majority choose one plausible set of circumstances over another. This does not constitute manifest error. In Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38, the Supreme Court specifically stated the following:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120,-1127 |2(La.1987); Rosell, supra; Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.
The other pertinent information is that the majority points out through Ms. Adams’ deposition testimony that she testified that she suspected that the recurrent hernia was due to the failure to use mesh; however, prior to Dr. DeCorte informing Ms. Adams in October 1999 that Dr. O’Connell’s failure to use mesh had resulted in her fourth hernia, it was reasonable for the trial court to have found that she only had a “mere apprehension” that this was the cause. It is further reasonable for *729 the trial court to have found that Ms. Adams never appreciated that the failure to use mesh might be contrary to the standard of care and therefore malpractice, especially since Dr. O’Connell continued to assure her that his use of the sutures was appropriate.
Ms. Adams’ deposition testimony also indicates that a reasonable factual basis exists for the district court’s denial of the peremptory exception of prescription, such as Ms. Adams’ response to the question asked by plaintiffs counsel, which follows:
Q. ... Tiffany, when did you become aware that the nonuse of mesh was, in your mind, medical malpractice?
A. When I spoke with Dr. DeCorte in October, when he told me that mesh should have been placed.
Moreover, counsel for defendant followed up with questions to which plaintiff confirmed that in April 1999 she first noticed the fourth hernia, at which time she already knew that defendant had not used mesh in the repair of her third hernia, although she had asked for mesh. Counsel for defendant then asked plaintiff whether it was true that when she first noticed the fourth hernia, and when Dr. Samuels diagnosed it in June 1999, she knew it had been inappropriate for | defendant not to have used mesh. Plaintiffs counsel objected, but let plaintiff answer the question. Plaintiff replied that she was not a doctor, and thus did not know it had been inappropriate until she was so informed by Dr. DeCorte in October 1999. Questioned further, plaintiff said that from what defendant had told her, she believed defendant had done everything he could have done for her, so she did not think about it until she went to see Dr. DeCorte in October 1999 and he told her that it had been done incorrectly. When asked whether, after being diagnosed with a hernia in June 1999 by Dr. Samuels, she had thought that defendant’s failure to use mesh had been inappropriate, plaintiff stated:
Obviously not, because I mean, [defendant] told me everything was okay. So he told me that the muscle repair was done and that everything was going to be fine.
Counsel for defendant pursued this line of questioning further, during the following colloquy:
Q. Did you think that was malpractice in April of '99—
A. No.
Q. —or June of '99?
A. No.
Q. You were upset, mad at him?
A. I was upset, yes, because I’m thinking I had another hernia, and that, you know, he didn’t place the mesh when it needed to be placed.
Q. And you thought that hernia, in April or June of '99, was caused by not using the mesh?
A. I didn’t know what it was caused from.
Q. I though you had testified to that earlier.
A. It wasn’t a trauma or anything. So I don’t know — like I said, I’m not a doctor or a psychic to know exactly what it’s caused from.
|4While the majority recognizes that the party should not be elevated to the status of sophisticated plaintiff, its ruling indicates otherwise. Moreover, as stated in this court’s prior writ:
In the instant case the trial court was presented with two possible constructions as to when plaintiff had knowledge sufficient to trigger the running of prescription. One interpretation of the facts is that prior to Dr. DeCorte informing plaintiff in October 1999 that defendant’s failure to use mesh had resulted in her fourth hernia, she only had *730 a “mere apprehension” that this was the cause. Another interruption is that plaintiffs suspicions about the mesh-hernia connection were enough to excite her attention, put her on guard and call for inquiry after being diagnosed by Dr. Samuels with her fourth hernia in June 1999.
Given these two interpretations, we cannot say that the trial court erred in its factual determination thereby denying the Exception of Prescription.
The Louisiana Supreme Court reiterated the rule that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished, stressing that when a court is faced with two possible constructions it should adopt that which favors maintaining an action, as opposed to barring it. Carter v. Haygood, 2004-0646, pp. 10-11 (La.1/19/05), 892 So.2d 1261,1268.
Based on Supreme Court precedent and the highly subjective interpretation of the facts of this case, the writ should be denied.