ROLAND L. BELSOME, Judge.
| Plaintiff-Appellant Mariner’s Cove Townhome Association, Inc. appeals the trial court’s assessment of damages against Defendant-Appellee Vincent J. Glorioso, III. For the reasons that follow, we affirm.
FACTS
Appellant Mariner’s Cove Townhome Association, Inc. (hereafter “Mariner’s” or “Appellant”) sued Appellee Vincent J. Glo-rioso, III as the owner of a condominium at Unit 5, Spinnaker Lane, New Orleans, Louisiana, to recover Association fees, interest, attorney’s fees and costs.
On April 3, 2003, Appellee, Mr. Glorioso, III (hereafter “Mr. Glorioso”), mortgaged the property. At the time Appellee mortgaged the property, the condominium fees were $2,600.00 per year, payable in two $1,300 installments. Accordingly, Appellee was billed by Mariner’s for one 2003 installment, which he disputed. Appellee also disputed the 2004 bill, which totaled $2,600.00.
Mariner’s mailed Mr. Glorioso a demand letter in October 2004. After some negotiation, in March of 2005, Mariner’s sent a Compromise and Settlement ^Agreement to Mr. Glorioso, providing that a total of $6,857.88 be paid in twelve monthly installments of $571.49. Between May and July of 2005, Appellee made four payments of $100.00 each. Mariner’s filed suit on June 28, 2005, before receipt of the July $100.00 payment. On August 22, 2005, counsel for Mr. Glorioso mailed a check[1] to Mariner’s for $6,200.00 to settle the matter; the next day, counsel for Mariner’s replied in writing to advise that the check would cover the principal amount only, and to further advise him that the remaining costs and fees would be litigated.[2] Before the matter could be resolved, Hurricane Katrina struck on August 29, 2005, and Mr. Glorio-so eventually withdrew his offer.
PROCEDURAL HISTORY
After a trial on August 24, 2006, the court found that Mariner’s was entitled to Association fees from Appellee for March 13, 2003, through August 31, 2005, a total of $5,633.00 (less the previously paid $400.00, for an actual total of $5,233.00), including interest at 18% (for July 2003 through August 2005) and attorney’s fees at 15%. The court further determined that this assessment would be suspended until the Mariner’s Association was again active on the property. This appeal followed.
I,¿DISCUSSION
In its first assignment of error, Mariner’s asserts that the trial court erred *616 in suspending the judgment against Mr. Glorioso and in finding that there has been no activity by Mariner’s on the property. We disagree.
Mariner’s argues that the Association’s charter provides for the right to establish reserves for capital improvements, that it incurred and paid expenses in 2005, and finally, that despite the fact that the activities for which the fees are normally imposed[3] were not occurring, that other, “non-visible” activities were occurring,[4] necessitating the need to continue to collect Association fees at the same level as before Hurricane Katrina.
Mariner’s concedes, however, that the property was not habitable after the hurricane, and acknowledges that the property could not receive water, sewerage, ^drainage, or electrical service, all of which would have been necessary to make repairs and/or rebuild property. Additionally, Mr. Glorioso put forth evidence at trial that the property was not livable; that no guards or security were in place; that looting had occurred on the property; that the grass had been cut only on one occasion; that there were no waste management services; that no repairs had been made; that fences and gates remained unrepaired; and that the Association Board elected not to rebuild the property, but to sell it to a developer.
It is well-settled in Louisiana that appellate courts may not disturb findings of fact absent manifest error:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 *617 So.2d 840, 844 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Rosell, supra; Stobart, supra.
Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733, 737. Moreover, the trial court is in a superior position to evaluate the weight of the evidence and the credibility of witnesses. See, e.g., Harris v. Doucette, 539 So.2d 997, 999 (La.App. 4 Cir.1989). We find that the trial court was not manifestly erroneous in its determination that Mr. Glorioso’s assessment should be suspended until the Association resumes activity on the property, and Mariner’s has failed to cite any legal authority to the contrary. This assignment of error lacks merit.
Un its second assignment of error, Mariner’s submits that the trial court erred in limiting attorney’s fees, interest, and costs. We disagree.
Mariner’s declarations, in the amendments to Article VII, provide for a “reasonable attorney’s fee” and interest at either 1.5 per month or an “other reasonable rate that may be fixed by the Board and uniformly applied” in the event that the Board must collect a delinquent assessment. After hearing the testimony from the witnesses at trial and reviewing all of the evidence, the trial court determined that 15% was a reasonable measurement of attorney’s fees, as well as 18% interest. Absent an abuse of discretion, an appellate court will not interfere with an award of costs. Vela v. Plaquemines Parish Gov., 00-2221, p. 29 (La.App. 4 Cir. 3/13/02), 811 So.2d 1263, 1283. Because we do not find that the trial court abused its discretion with regard to its determination of attorney’s fees and interest, we find that this assignment of error is likewise without merit.
Without reference to any legal authority, Mariner’s also assigns as error the trial court’s exclusion of a report from MCI Consulting Engineers dated December 9, 2005. Mariner’s maintains that this report would have established the Association’s anticipated expenses and thus the need to build monetary reserves. Therefore, Mariner’s argues, it would have evidenced the Association’s need to maintain the annual fees at $2,600.00 and sustain approximately $100,000 in its reserves post-Hurricane Katrina, when essentially none of the activities for which the fees are collected were actually occurring. Because we find no error in the trial [^court’s suspension of the assessment against Mr. Glorioso, we find that the alleged error of excluding the engineering report, if any, was harmless.
Finally, Mariner’s submits that the trial court erred in canceling the Association’s lien and privilege that was recorded in the Orleans Parish mortgage records. This assignment of error is no longer relevant, as Mr. Glorioso has subsequently sold the property at issue. Accordingly, this assignment of error is now moot.
The judgment of the trial court is hereby affirmed.
AFFIRMED

. Mr. Glorioso, Jr. is the father of Mr. Glorio-so, III, and represents him in the instant case.

. The correspondence dated August 23, 2005 to Mr. Glorioso, Jr., from Jacob Kansas, counsel for Mariner’s, read as follows:
Before I accept your son’s check of $6,200, I want to make it perfectly clear that I intend to proceed for interest, attorney's fees and court costs. This will further confirm that I have rejected your offer of $300.00 for settlement of the interest and attorney’s fees, and accordingly I am setting the matter for trial.

. Within the declarations of Mariner's Cove Townhomes, in Article VII, under the heading "Purpose of Assessments" is a description of how the condominium fees are expended (emphasis supplied):
The assessments levied by the Association shall be exclusively for the management and maintenance of the Properties, for the purpose for the performance of the duties and obligations incurred by the Association pursuant to these Declarations, for repairs, replacement, maintenance and insurance of walkways and streets within the Properties, caring for the grounds, mowing grass, landscaping, garbage pickup, administration expenses, working capital, the hiring of personnel necessary for implementation, rental and acquisition of real or personal property, and in connection with other duties to be performed under these Declarations, or that the Association, in its opinion, shall determine to be necessary and desirable including the establishments and maintenance of a cash reserve for such repairs, maintenance and other expenses to be incurred as herein specified. In the event repairs are required resulting from negligent acts of the Owner, the Owner’s family, guests, employees, invitees or lessees, the Association shall be reimbursed forthwith by such Owner thereof.
Additionally, in Article I of the declarations, the definition of "Expenses of Maintenance” is described as follows (emphasis added):
"Expenses of Maintenance” shall mean the Owners’ pro rate (1/58 interest) share of the general common expenses including but not limited to, maintenance of all streets and pedestrian walkways within the project, lawn maintenance and landscaping, maintenance of water and sewer service, management costs, reserves for capital improvements, assessments and all other charges which the Association may levy upon the Owners in accordance with this Declaration.

. Mariner’s maintains that although it is not performing the listed activities under Article I or VII for which the assessments are collected, that it has incurred legal expenses in dealing with the Army Corp of Engineers and with regard to establishing legal requirements to sell the condominium complex. Mariner's also asserts that it continues to incur management fees that are paid to Mary Haindel, the owner and manager of Mariner’s Cove, who testified that she performed financial work, issued correspondence, conducted meetings, and so forth.