968 So.2d 1121 (2007)
Frederick JOHNSON
v.
TATE & LYLE NORTH AMERICAN SUGARS/DOMINO SUGAR.
No. 2007-CA-0392.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 2007.
*1122 John B. Fox, David Aden, John Fox & Associates, L.L.C., New Orleans, LA, for Appellee, Frederick Johnson.
John J. Rabalais, Janice B. Unland, Robert T. Lorio, Thomas B. Delsa, Rabalais, Unland & Lorio, Covington, LA, for Appellant, Tate & Lyle North America Sugars/Domino Sugar, Inc.
Court Composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.
Judge LEON A. CANNIZZARO, JR.
This case involves an appeal from the decision of a workers' compensation judge. The workers' compensation claimant, Fredrick Johnson, was awarded the payment of certain medical bills and reimbursement for the mileage that he drove to appointments with one of his physicians and to obtain prescriptions from a pharmacy. Mr. Johnson's former employer, Tate & Lyle North American Sugars/Domino Sugar, Inc. (the "Employer"), is now appealing the award for mileage, claiming that Mr. Johnson willfully misrepresented the number of miles that he drove.

FACTS AND PROCEDURAL HISTORY
Mr. Johnson worked for the Employer for approximately nineteen years as a pipe fitter. In July of 1993, he injured his back on the job. Mr. Johnson underwent several surgical procedures, and following the most recent surgical procedure, his physician, Donald Dietze, Jr., M.D., recommended that he participate in physical therapy in the form of aquatherapy. A utilization review company for the Employer's workers' compensation insurer denied the claim. Notice of the denial was sent to Mr. Johnson, his attorney, and Dr. Dietze. No appeal from the denial was ever taken.
Mr. Johnson filed a disputed claim for compensation regarding the denial of the aquatherapy. Subsequently, he filed an amendment to the claim to include a claim for the payment of unpaid medical bills and for reimbursement for the mileage that he had driven to the office of his psychiatrist, John R. Macgregor, M.D., and to a pharmacy, Majoria Drugs, to have certain prescriptions filled. He also sought to recover attorney's fees in connection with his claims.
Mr. Johnson requested mileage reimbursement for 140 roundtrips to Dr. Macgregor, each consisting of 37 miles. He also requested reimbursement for the $0.40 toll that he had to pay to cross the bridge over the Mississippi River each *1123 time that he visited Dr. Macgregor. Further, he requested reimbursement for sixteen roundtrips to Majoria Drugs, each consisting of 8 miles. Mr. Johnson was sent a check for $1,739.20 as reimbursement for the mileage and the tolls. He testified at the workers' compensation hearing, however, that he did not know why he received the check and had, therefore, never cashed it. He stated that when he received the check, he received no explanation stating what the check covered.
At the hearing Mr. Johnson testified regarding the mileage he claimed to have driven to visit Dr. Macgregor, and he said that he based the amount of the roundtrip mileage on his car's odometer readings for several trips to the doctor's office. He had also made the roundtrip drive to Dr. Macgregor's office a few days before the hearing "just to double check mileage." He also described in detail the route that he took in going to Dr. Macgregor's office. He testified that the roundtrip mileage was "36.4, 36.5, in that neighborhood." He further stated that in one of his cars, the mileage shown on the odometer was 37 miles.
Mr. Johnson also testified regarding the mileage to Majoria Drugs. He said that he had driven the route from his home to the drugstore just a few days ago, just as he had driven the route from his home to Dr. Macgregor's office. He also described the route to the drugstore in detail. The mileage for the roundtrip to the drugstore was 8.4 miles.
Mr. Johnson was questioned regarding the number of trips that he had made to Dr. Macgregor's office. He testified that, "It would be twice a week, so its [sic] probably somewhere100 and somewhat trips." In describing how he determined the exact number of roundtrip visits he made to Dr. Macgregor's office, he testified that Dr. Macgregor "gave me a paper." He stated that "I go by the paper he gave me." When he was questioned regarding the number of roundtrips that he made to the drugstore to have prescriptions filled, Mr. Johnson testified that "I keep track of all that with the prescriptions that I have."
Mr. Johnson also testified regarding the prescriptions that he had obtained for which he had not been reimbursed. He explained that he had given receipts to the workers' compensation insurer.
With respect to the denial of the aquatherapy that had been prescribed by Dr. Dietze, Mr. Johnson's neurosurgeon, Mr. Johnson testified that he received a letter denying the aquatherapy. He further testified that he did not, however, follow the appeal procedure that was set forth in the letter.
After Mr. Johnson testified at the workers' compensation hearing, Yvonne Gaudet testified. Ms. Gaudet was the senior claims representative for the Employer's workers' compensation carrier. She testified that she handled all of the workers' compensation claims that were filed by Mr. Johnson. She verified that the denial of the aquatherapy was never appealed through the appropriate utilization review process. She also explained that Mr. Johnson had been reimbursed for the roundtrip mileage to Dr. Macgregor's office based on a roundtrip of 34.5 miles, which was based on a calculation made by MapQuest, a website that calculates mileage. Mr. Johnson was also reimbursed for roundtrip mileage of 7.1 miles for his trips to Majoria Drugs, and, again, the number of miles per roundtrip was based on a MapQuest calculation.
When questioned about the medications for which Mr. Johnson was not reimbursed, Ms. Gaudet confirmed that the workers' compensation carrier had not *1124 paid for the prescriptions. She further confirmed Mr. Johnson's statement that he never received an explanation of what was covered by the $1,739.20 check that he received for mileage reimbursement. She testified that the insurer was not required to supply that information.
Ms. Gaudet further testified that she had received a report from an investigator hired by the workers' compensation carrier to calculate the roundtrip mileage to Dr. Macgregor's office and the roundtrip mileage to Majoria Drugs. She stated that the report indicated that the mileage amounts that Mr. Johnson had submitted exceeded the actual mileage.
The Employer's attorney also cross-examined Mr. Johnson regarding the mileage reimbursement. He asked Mr. Johnson whether he had claimed mileage reimbursement for dates on which Dr. Macgregor's records indicated that Mr. Johnson had missed his scheduled appointments. Mr. Johnson testified that he had based his mileage reimbursement amounts on the records that Dr. Macgregor had given him.
The workers' compensation judge rendered judgment ordering the Employer to pay for mileage of 37 miles per roundtrip for 114 visits to Dr. Macgregor's office. The Employer was further ordered to pay for mileage of 7.4 miles per roundtrip for 17 trips to Majoria Drugs. Reimbursement for tolls of $0.40 for each of the 114 trips to Dr. Macgregor's office was also ordered. All unpaid medical bills were required to be paid, and the Employer was also ordered to pay for the prescriptions for which it had not paid. The Employer was granted a credit in the amount of $1,739.20, which was the amount of the check that had been sent to Mr. Johnson without an explanation of what it covered. The claim for aquatherapy was found to be premature, because Mr. Johnson had not yet appealed the denial of the aquatherapy through the applicable administrative process. Each party was required to bear its own costs.
Finally, the workers' compensation judge expressly found that Mr. Johnson had not violated La. R.S. 23:1208. That statute provides for, among other things, penalties for willfully making a false statement or representation for the purpose of obtaining workers' compensation benefits.

DISCUSSION
Standard of Review
In Freeman v. Poulan/Weed Eater, 93-1530 (La.App. 4 Cir. 1/14/94), 630 So.2d 733, the Louisiana Supreme Court discussed the standard of review to be used in workers' compensation cases as follows:
In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. A court of appeal may not set aside a trial court's or a jury's finding of fact in [sic] absence of "manifest error" or unless it is "clearly wrong." The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
93-1530, 630 So.2d at 737-38 (citations omitted). See also Davis v. Sheraton Operating Corp., 97-2784, p. 2 (La.App. 4 Cir. 5/20/98), 713 So.2d 814, 815.
*1125 Assignment of Error
The Employer asserts a single assignment of error on appeal. The Employer contends that the workers' compensation judge erred in failing to find that Mr. Johnson committed fraud by willfully misrepresenting the mileage to and from his doctor visits and that Mr. Johnson made the misrepresentation for the purpose of obtaining workers' compensation benefits to which he was not entitled. The Employer further claims that the workers' compensation judge should have declared that Mr. Johnson's entire claim for workers compensation was forfeited under La. R.S. 23:1208 and should have ordered Mr. Johnson to make restitution of all workers' compensation benefits received after he misrepresented the mileage.
La. R.S. 23:1208 provides in relevant part as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter [on workers' compensation], either for himself or for any other person, to willfully make a false statement or representation.
. . . .
D. In addition to the criminal penalties provided for . . . any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars . . . and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by [sic] workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
While it is clear that Mr. Johnson made a claim for mileage reimbursement for approximately sixteen roundtrips to Dr. Macgregor's office on dates that Dr. Macgregor's records indicate that Mr. Johnson missed his appointment, the issue is whether this misrepresentation was willful. The workers' compensation judge clearly thought that the misrepresentation was not willful, because she specifically found that Mr. Johnson had not violated La. R.S. 23:1208.
Our review of the record indicates that the workers' compensation judge was correct in her finding. Mr. Johnson testified that Dr. Macgregor had given him a "paper" showing all of the visits that he had made to Dr. Macgregor. This "paper" was not available at the hearing before the workers' compensation judge. What was available and entered into evidence were the records of Dr. Macgregor, including billing statements in which the dates that Mr. Johnson had appointments were listed. Beside some of these dates were asterisks indicating that Mr. Johnson had missed the scheduled appointment. Nevertheless, Dr. Macgregor charged for all scheduled visits, even those that Mr. Johnson missed. It is a reasonable conclusion from the evidence and the record that the workers' compensation judge utilized the billing statement and the testimony of Mr. Johnson in finding that Mr. Johnson did not willfully make a false statement or misrepresent his workers' compensation claim.
If Mr. Johnson intended to misrepresent the mileage reimbursement claim for his appointments with Dr. Macgregor, it is unlikely that he would have bothered to obtain a "paper" from Dr. Macgregor. Mr. Johnson did not know the exact number of visits he had made to Dr. Macgregor,[1] *1126 and he wanted to verify the number of visits by obtaining that information directly from Dr. Macgregor's office. This is not something with which he would have been concerned had his intent been to willfully defraud his Employer or its insurer.
Mr. Johnson offered to revise the mileage reimbursement claim when he was confronted with evidence that there were errors in the claim that he had made. It seems unlikely that Mr. Johnson was willfully trying to deceive the Employer or its insurer with respect to the mileage calculations, because Mr. Johnson did not cash the reimbursement check that was sent to him. Instead, he testified that he did not cash the check, because he did not know why he had received it. Had Mr. Johnson willfully misstated the mileage reimbursement amounts, it would seem that he would have immediately cashed any check that he received from the workers' compensation insurer. Further, a few days before the workers' compensation hearing, Mr. Johnson drove from his home to Dr. Macgregor's office and from his home to Majoria Drugs to verify the mileage for which he claimed reimbursement. This does not seem to be something that he would have bothered to do, if he were willfully misstating the mileage.
The record contains ample evidence from which the workers' compensation judge could have concluded that Mr. Johnson did not willfully misstate the amount of mileage for which he claimed reimbursement. Additionally, the workers' compensation judge was able to evaluate the credibility of Mr. Johnson's live testimony, and she obviously found him to be credible. We find no error in the ruling of the workers' compensation judge on the issue of whether Mr. Johnson made a willful misrepresentation designed to obtain workers' compensation benefits to which he was not entitled. This assignment of error is without merit.

DECREE
The findings of the workers' compensation judge were neither manifestly erroneous nor clearly wrong. The judgment of the workers' compensation judge is hereby affirmed.
AFFIRMED.
NOTES
[1] The record reflects that Mr. Johnson had numerous visits to Dr. Macgregor over a nineteen-month period.