# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


# 03-1720


**ALTHEA WELLMAN, TUTRIX OF JARED LAMONT SAMUEL**

**VERSUS**


**JOHNNY M. EVANS, JR., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 62,247-A
HONORABLE VERNON B. CLARK, PRESIDING
**\*\*\*\*\*\*\*\*\*\***


# SYLVIA R. COOKS
# JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Billie Colombaro Woodard and Marc T. Amy, Judges.


**AFFIRMED.**

**Michael H. Schwartzberg**
**Vamvoras & Schwartzberg**
**1111 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-1621**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Althea Wellman, Tutrix of Jared Lamont Samuel**

**David R. Lestage**
**Hall, Lestage & Landreneau**
**P.O. Box 880**
**206 W. Second Street**
**DeRidder, LA 70634**
**(337) 463-8692**
**COUNSEL FOR DEFENDANT-APPELLEE:**
**M. Bolivar Bishop, Sheriff of Beauregard Parish**


**L. Lane Roy**
**Jennifer A. Wells**

**Pries, Kraft & Roy**
**Versailles Center**
**102 Versailles Blvd., Suite 400**
**P.O. Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANTS-APPELLEES**
**The City of DeRidder and Arvin Malone, in his Official Capacity**
**as Chief of Police of the City of DeRidder.**

**COOKS, Judge.**

This appeal involves a claim for damages arising from the murder of Ernest Prater, Jr., who was shot and beaten to death on the evening of August 27, 1997. Prater was killed after traveling to the Vernon Parish Spillway with Johnny Evans, Jr. and Eric Pickens. Pickens pled guilty to manslaughter and testified against Evans who was eventually convicted of the second degree murder of Prater.

At the time of his death, Prater was working as a confidential informant for the Beauregard Parish Drug Task Force. The Task Force was a joint venture between the DeRidder City Police Department and the Beauregard Parish Sheriff's Office. Prater, who was incarcerated in the Beauregard Parish Jail at the time, sent two letters in July and August of 1997 to Robert L. McCullough, the Task Force director, about assisting the Task Force. Prater was interviewed by two Beauregard Parish Sheriff's Deputies, Saul Wilson and Betty Pichon. On August 1, 1997, he signed a confidential informant agreement with the Task Force. He was released from jail shortly thereafter.

On the night of August 13, 1997, Prater was arrested by Patrolman Johnny Evans, Sr., for shooting at another vehicle while on a bicycle. According to Evans, Sr., Prater was charged with possession of a firearm, illegal use of a weapon, and aggravated assault. Prater asked to speak with members of the Task Force to inform them of alleged drug activity involving Eric Pickens. As a result of this information, a search was conducted of Pickens' apartment, and he was arrested on drug charges. Prater was released from jail after passing his information on to the Task Force. After his arrest, Pickens also met with Task Force members and signed his own confidential informant agreement.

On August 20, 1997, Prater informed the Task Force that Johnny Evans, Jr., was attempting to purchase a large amount of marijuana in Lafayette. However, that deal fell through. Deputy Wilson then suggested that Prater contact Evans, Jr. and see if he would be interested in purchasing a similar amount of marijuana from an

undercover agent in Beauregard Parish. Although Prater talked with Evans, Jr. at the instruction of the Task Force, the proposed sting operation never came to pass.

On August 25, 1997, Prater went to the Vernon Parish Spillway with Evans, Jr. and Pickens, where he was beaten to death. Althea Wellman, acting as the tutrix of Prater's minor son, Jared Lamont Samuel, filed suit contending the Task Force failed to meet the minimum standard of care in the use and handling of Prater as a confidential informant. Named as defendants were the City of DeRidder, Arvin Malone, in his capacity as chief of Police of the City of DeRidder, and M. Bolivar Bishop, the Beaurgard Parish Sheriff.

Specifically, plaintiffs contended that a duty was owed to Prater and that a breach of that duty occurred when Johnny Evans, Sr., was informed of Prater's status as a confidential informant when his son, Evans, Jr. was a target of the proposed sting operation. They contend because of this breach, Pickens and Evans, Jr. became aware of Prater's involvement and killed him. Plaintiff also contended alleged negligent acts and omissions of the Task Force members contributed to the death of Prater.

The matter went to trial. The trial court ruled in favor of defendants, finding the duty owed by the Task Force to Prater was one of reasonableness under the totality of the circumstances. While the trial court felt the evidence revealed the Task Force members may not have used the "best" or "most desirable" method of handling Prater, it did not breach the duty of reasonableness owed to Prater. The trial court set forth the following reasons for its judgment:

> The facts established that Prater was a criminal with a history of activity. Because of this he was in and out of jail. Subsequent to his arrest for the drive-by-shooting, he and the Task Force entered into a written confidential/cooperating individual agreement. This agreement was in essence and law, a contract between the two parties.
>
> In general, police officers have a duty to maintain peace, maintain the law, to act reasonably to protect the public while enforcing the law

and to refrain from causing injury or harm. This is a duty owed to the public in general. However, that duty may become a duty to an individual where it is converted by a close personal relationship between the officer and individual.

In the instant case, the Task Force went beyond a general duty and, by virtue of the written agreement with Prater, accepted a greater duty to him to protect him by using reasonable care in the performance of the contract. Similarly, Prater agreed to a certain set of standards as to his activity and conduct.

The obvious question is what standard of care did the parties agree to comply or conform to? There was a great deal of disparity between the expert witness testimony of each party as to the applicable standard of care.

Although there was a contract between the parties in this case, it was generally void of specifics. Therefore, the court will consider the jurisprudence to determine the applicable standard of care.

The generally accepted standard of care for police officers is one based upon reasonableness under the totality of the circumstances. Said another way, was the course of action of the Task Force reasonable under the circumstances?

The plaintiff maintains that standards or policies written by the International Association of Chiefs of Police (IACP) should apply as the minimum standard of care. There are no laws of this state which have statutorily mandated these guidelines. Neither is there jurisprudence which accepts them as the standard. Rather, these guidelines indicate simply that the analysis should be based upon a standard of reasonableness and of a careful and prudent person (officer) considering the totality of the circumstances of each case. In essence, that is what the law and jurisprudence states conduct under LSA-C.C. Article 2315 should be judged by in determining fault.

Therefore, this court declines to accept the IACP policies as the standard of care, but rather, will accept the standard of care as cited above under the reasonable man standard considering the totality of circumstances.

### (2) Was the duty breached?

The evidence established that there was a lack of communication between the members of the Task Force. It appeared that Prater was brought in as a confidential informant and then, shortly thereafter,

Pickens was signed up as one as well. The evidence shows less than desirable coordination between the officers who were dealing with the two informants, particularly in light of the fact that Prater had "snitched" on Pickens initially. Furthermore, there is evidence that tends to indicate a less than desirable control over who knew what about Evans, Jr., particularly as it relates to his father, [Evans, Sr.], a police officer and friend of Pickens.

This court must, however, analyze the evidence regarding the standard of care that the court has stated applies to this case. Thus, the court will look at the totality of the circumstances.

The evidence does not establish that Evans, Sr. became aware of the status of Prater, as alleged, and then told that information to Pickens and Evans, Jr. due to a lack of care of the Task Force members. Rather, there was testimony by one of the killers that he became aware of Prater's status as a "snitch" from street talk. There was also evidence that Prater himself divulged this information to others practically from the moment he signed the agreement.

Neither is there sufficient evidence to establish that the Task Force botched or mishandled the reverse sting. The evidence did prove that there were efforts by the Task Force and Prater to set up a reverse sting with Evans, Jr. as the target. However, that effort never got far enough to be put into motion. There was no reverse sting ever done with Evans, Jr.

Undercover drug activities using confidential informants cannot be subject to rigid, strict controls.

The expert witness testimony established that these kinds of operations are fluid, and that with the use by law enforcement of a criminal, who is out on the street dealing with other suspected criminals creates a situation that is not readily subject to strict control. That is why the totality of circumstances are considered on a case-by-case basis using a reasonableness standard.

While the evidence shows that the Task Force members may not have used the "best" or "most desirable" method of handling Prater, the standard of care required that the Task Force use only reasonable action under the circumstances. That is what they did.

The court finds that the actions of the Task Force did not breach the standard of reasonableness regarding the use of Prater as a confidential informant, nor does this court find that the actions of the Task Force were a cause in fact of his death. The actions of Prater

himself, as well as Pickens and Evans, Jr., resulted in the death of Prater.

Plaintiffs appealed the trial court's decision, asserting the following assignments of error:

1.   The trial court erred in finding plaintiffs failed to prove Johnny Evans, Sr. divulged confidential information to Johnny Evans, Jr. and Eric Pickens which caused Prater's death.

2.   The trial court erred in finding that Deputies Wilson and Pichon were not negligent in their use and handling of Prater as a confidential informant and that such negligent acts were not a cause of Prater's death.

3.   The trial court erred in not finding Sheriff Bolivar and the City of DeRidder liable under *respondeat superior* principals.

4.   The trial court erred in not awarding damages to the plaintiff for the negligent acts of the defendants.

5.   The trial court erred in not assessing 100% of the fault of Prater's death to the defendants.

## ANALYSIS

The liability of a police officer is determined using the duty/risk analysis. *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318. For a plaintiff to recover, he must prove the defendant had a duty to conform his conduct to a specific standard of care; he failed to conform his conduct to that standard; that substandard conduct was a cause-in-fact of the injury, the substandard conduct was a legal cause of the injury; and damages. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Id*. at 322.

Plaintiff's first three assignments of error contend the trial court erred in its duty-risk analysis. The trial court found there was a duty owed to Prater by the defendants, which it defined as the reasonable man standard considering the totality of the circumstances. However, the trial court found the actions by the defendants did not breach the duty owed to Prater, thus ending the duty-risk inquiry.

We find no error in the trial court's conclusion that the appropriate duty owed was that of the reasonable man standard considering the totality of circumstances. In *Courville v. City of Lake Charles*, 98-73 (La.App. 3 Cir. 10/28/98), 720 So.2d 789, this court addressed the duty owed by police officers when the plaintiff had earlier advised police that his wife had taken the family vehicle and was in search of illegal drugs. Police stopped the wife, who appeared lucid and calm. Officers administered a nystagmus test, which is designed to check only for alcohol. She was not tested for narcotics, because that would have required being brought to a facility for a blood or urine sample. The wife gave the police permission to search the vehicle, but no contraband was recovered. The officers then contacted the husband, who requested that his wife be detained at the scene. The officer responded that he had no lawful reason for detaining her, and let the wife go, advising her to return home. However, the wife hours later robbed a convenience store and fled from police in her vehicle. Eventually, the wife struck a telephone pole and was killed. Cocaine was later found in her system. The husband filed a wrongful death suit. This court found the duty owed by police was one of "reasonableness under the totality of the circumstances." Id., at 797. The trial court, citing *Mathieu* also noted that an officer's "actions need not be the 'best' method of approach; rather the standard of care requires choosing only a course of action that is reasonable under the circumstances." *Id*., at 798.

A police officer, in carrying out his authority to enforce laws, has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. An officer must act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for the well being of those he is employed to protect. *Syrie v. Schilhab*, 96-1027 (La.5/20/97), 693 So.2d 1173. In considering whether an officer breached his duty, the court's task is not to determine whether the officer

should have acted differently or if there were better options available, but only to determine whether his actions were reasonable under the totality of the circumstances. *Syrie*, 693 So.2d 1173; *Mathieu*, 646 So.2d 318.

After an examination of the jurisprudence, we find the trial court did not err in using a standard of reasonableness under the totality of the circumstances.

The thrust of plaintiff's argument is that the trial court erred in its analysis of whether the defendants breached the duty owed to Prater. Plaintiff calls this court's attention to certain allegedly negligent acts and omissions committed by the defendants in this case. The issue of breach of duty is a factual question subject to the manifest error rule. "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart v. State, Through DOTD*, 617 So.2d 880, 883 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id*. at 882. However, a reviewing court may reverse a factfinder's determination if such factual findings are not reasonably supported by the record and are clearly wrong. *Id*. We will examine the question of breach as it relates to the individual defendants.

## I.  *City of DeRidder & Beauregard Parish Sheriff, through the actions of the Task Force Members.*

As the Task Force was a joint venture between the DeRidder City Police Department and the Beauregard Parish Sheriff's Office, the alleged negligent acts and omissions of the Task Force members determine liability for both of these defendants.

Plaintiff was required to prove by a preponderance of the evidence that conduct of an employee of the DeRidder City Police Department or the Beauregard Parish Sheriff's Office was a breach of the duty owed to Prater and a substantial factor in causing Prater's death. Plaintiff argues Prater was never warned of anything nor given

any directions. Plaintiff also points out the Task Force was aware that Prater had told others he was going to work for the police while he was still in jail, and as such it was not reasonable to use Prater given this knowledge. The trial court noted that while "the Task Force members may not have used the 'best' or 'most desirable' method of handling Prater, the standard of care required that the Task Force use only reasonable action under the circumstances." The trial court found that the Task Force's action was reasonable. We agree.

There is no indication in the record that Deputies Wilson and/or Pichon disclosed to anyone outside of fellow law enforcement that Prater was a confidential informant for the Task Force. There also is no evidence that on the night of his murder Prater was performing any function requested by the Task Force. There likewise is no evidence in the record that the deputies had any reason to know that Officer Evans told or would tell his son or Pickens that Prater was a police informant. It would not be unreasonable for members of the Task Force to conclude that a fellow officer would not disclose such information. We also note it was Prater himself who requested of Evans, Sr. that he contact the Task Force. Therefore, any knowledge obtained by Evans, Sr. as to Prater's informant status was not gleaned from the actions of the Task force members.

While there was evidence to indicate that the Task Force attempted to set up a "reverse sting" against Evans, Jr. using Prater, it was established that this attempt was never carried out. There was nothing in the record to indicate Prater was with Evans, Jr. and Pickens on the night of the murder at the direction of any Task Force member or in furtherance of any Task Force objective.

After a thorough examination of the record, we find no evidence to cause us to find clearly wrong the trial court's determination that plaintiff failed to carry the burden of proving by a preponderance of the evidence that conduct of an employee

of the Task Force amounted to a breach of the duty owed to Prater.

## II. *City of DeRidder, through the actions of Patrolman Johnny Evans, Sr.*

Plaintiff contends the trial court manifestly erred in its factual determination that Johnny Evans, Sr. did not reveal Prater's confidential informant status to Johnny Evans, Jr. and/or Eric Pickens. Plaintiff points to a statement Pickens made to Deputy Wilson that Evans, Sr. disclosed Prater's confidential informant status to him.

Evans denied revealing anything about Prater's status, but did believe his son and Pickens were aware of Prater's involvement with the Task Force. He also felt Prater's status as an informant was the reason he was murdered.

The record reveals conflicting accounts in the record as to how Pickens and Evans, Jr. became aware of Prater's confidential informant status. Plaintiff relies on the statement of Pickens that Evans, Sr. disclosed Prater's status to him and Evans, Jr. However, Pickens also testified that he and Evans, Jr. had previous knowledge that Prater was informing for law enforcement:

> Q:    Okay. Who told uh, who told that Ernest [Prater] was ratting people out or . . . ?
>
> A:    Johnny.
>
> Q:    How did he know?
>
> A:    He said those dudes on Bishop told him.
>
> Q:    On Bishop?
>
> A:    He didn't say no names. He said some niggers on Bishop told me that Ernie was the one ratting us out.

Pickens attempted to deny his deposition testimony at trial, but when confronted with it he admitted it was true. As plaintiff acknowledges, there was also testimony in the record that Prater began telling people he was working for law enforcement from the day he signed the agreement with the Task Force. Thus, the record supports a conclusion that Evans, Jr. and Pickens were already aware of Prater's informant status

well before the alleged disclosure by Evans, Sr. Although the trial court did not reach the issue of whether any alleged leak of Prater's status by Evans, Sr. was a cause-in-fact of Prater's death, it is equally arguable his death was caused by the knowledge Evans, Jr. and Pickens acquired regarding Prater's status in the weeks prior to the alleged leak.

Plaintiff also relies on the fact that Evans, Sr. was subsequently dismissed from the DeRidder City Police Force. In a letter from Chief Malone informing Evans, Sr. of his dismissal, he stated there was no logical reason for Pickens to make up such a story. Chief Malone also concluded while there may have been "street talk" about Prater's informant status, "retaliation against people accused of being confidential informants" has not occurred based on such "street talk." Although, Evans, Sr.'s subsequent dismissal may preponderate against him, we are not bound by findings in a civil service proceeding.

In *American Employers Ins. Co. v. Honeycutt Furniture Co.*, 390 so.2d 255 (La. App. 3 Cir. 1980), this court dealt with the alleged negligence of a City of Sulphur fireman. The damage caused by a fire resulted in a civil suit filed by the insurance company against the city to recover funds paid to the insured. In that case, the Civil Service Board had found the fireman negligent and terminated his employment. On appeal, the insurer argued the City was barred from contesting the fireman's negligence on the basis of a letter introduced at the civil service proceeding written by the Mayor of Sulphur stating that the fireman was negligent in the performance of his duties. This court stated as follows:

> We find [the Mayor's] statement that [the fireman] was negligent in the performance of his duty was nothing more than an opinion based on facts admittedly not within his own knowledge. Under these circumstances, his statement has no evidentiary value and has no effect on the City's position in this case.

*Id.* at 260.

Our task as a reviewing court is not to assess whether the trial court's factual findings are right or wrong in an absolute sense, nor whether we or another trier of fact might reasonably reach a different conclusion from the same evidence. Rather, we must solely ask whether the factfinder's resolution of the conflicting evidence was reasonable in light of the record as a whole. *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733. Given the conflicting testimony in the record, we cannot say the trial court manifestly erred in finding Johnny Evans, Sr. did not breach the duty owed to Ernest Prater.

Having found the trial court did not err in finding Defendants did not breach the duty owed to Prater, the plaintiff's remaining assignments of error concerning damages and fault apportionment are rendered moot.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.

**AFFIRMED.**